# Lukehart *versus* Byerly.

1. Words laid in a count for slander, which are not actionable of themselves and have no *colloquium* to connect them with extrinsic circumstances, are not helped by the innuendo of larceny.

2. Words are actionable in themselves only where they impute an offence, indictable and punishable at common law or by statute.

3. It is sufficient to state the substance of the words spoken; but the imputation, whether in substance or *hæc verba*, must be of a distinct criminal offence or it is not slanderous *per se.*

4. When words *per se* do not import a crime, a *colloquium* is necessary to couple them with facts which give a particular hue to the meaning, and by the help of innuendoes designate the persons and things alluded to, and disclose the charge of guilt.

5. Words that the plaintiff "had 'taken apples,' or had 'stolen apples,' or had 'taken apples without asking for them', or words to that effect, and in substance, that the plaintiff had committed larceny," are not actionable.

6. Words are not to be received in *mitiori sensu*, but in the plain and popular sense in which the world in general understands them.

7. Where the general issue only is pleaded, the defendant may assail the general character of the plaintiff, but cannot give evidence of particular reports, nor of the general currency of the particular charge which he took up and endorsed.

8. A general judgment in slander when some of the counts are bad is erroneous.

ERROR to the Court of Common Pleas of *Armstrong county.*

In the court below this was an action of slander, commenced January 27th 1864, by David Byerly against John C. Lukehart; the defendant pleaded "not guilty."

There were four counts in the declaration.

The 1st charged that the defendant spoke certain "defamatory words, in substance as follows, to wit: that the said David Byerly had 'taken apples,' or had 'stolen apples,' or had 'taken apples

[Lukehart *v.* Byerly.]

without asking for them,' or words to that effect, and, in substance, that the plaintiff had committed larceny."

The 2d charged the speaking " words, in substance as follows, to wit: that he had taken apples, or stolen apples, or had taken or stolen apples out of Borland's orchard, &c., meaning thereby and charging that he had committed larceny."

The 3d charged the speaking " words, in substance as follows, to wit: that he had taken apples, or had stolen apples, or was a thief, and was in the habit of stealing, so meaning that the plaintiff was guilty of larceny."

The 4th charged the speaking " words, in substance as follows, that is to say, that David Byerly (the plaintiff meaning) had taken apples out of Boreland's orchard without asking for them, and that David Byerly (the plaintiff meaning) had stole or stolen apples out of Mr. Boreland's orchard, and that he (the defendant meaning) could prove it, thereby meaning and intending, that the said David Byerly (the plaintiff) had stolen apples from the orchard of Mr. Boreland, and that the said defendant could prove that he had done so, and that the said plaintiff was guilty of larceny and stealing."

On the trial the defendant proposed to prove, " that weeks before the plaintiff alleges the defendant should have spoken the words charged in the *narr.*, they had been spoken by other parties, and were in *general circulation* in the neighborhood of the defendant, and the story was communicated to the defendant."

To which the court answered :—

" We reject the first part of the proposition, to prove that there were reports of this matter through the country, and had been spoken of by others. But we admit that part which proposes to prove that the circumstances were communicated to defendant before the uttering of the words proved in this case."

To this the defendant excepted.

The defendant in one of his points asked the court to charge, that " under the pleadings and evidence" the plaintiff could not recover: which the court refused.

The jury found for the plaintiff " $5.33, and the defendant to pay full costs of suit."

The defendant took a writ of error, and assigned for error the ruling as to the evidence, and the answer to his point; also, " in entering judgment upon the verdict, which was an assessment of entire damages upon several counts, some of which, at least, contained no cause of action."

*Barclay & Smullen*, for plaintiff in error, cited Vanderlip *v.* Roe, 11 Harris 82 ; 1 Chitty's Pleadings 404 ; Yundt *v.* Yundt, 12 S. & R. 427 ; Ward *v.* Clark, 2 Johns. 10 ; Gosling *v.* Morgan, 8 Casey 273 ; Weierbach *v.* Trone, 2 W. & S. 409 ; Dottarer *v.*

[Lukehart *v.* Byerly.]

Bushey, 4 Harris 204; 1 Starkie on Slander 370–72; Olmstead *v.* Miller, 1 Wend. 506; McConnel *v.* McCoy, 7 S. & R. 223; Tipton *v.* Kahle, 3 Watts 93; Johnston *v.* Tait, 6 Binn. 121; Van Rensselaer *v.* Dole, 1 Johns. Ch. 279; 1 Bac. Abr. 239, 240; 4 Coke's Reports 19; Maxwell *v.* Allison, 11 S. & R. 344; Stees *v.* Kemble, 3 Casey 112; Edie *v.* Brooks, Supreme Court, May 1814, MS.; Day *v.* Robinson, 4 Nev. & Man. Rep. 884; 1 A. & E. 554; Ruth *v.* Kuntz, 1 Watts 489; Hays *v.* Brierly, 4 Id. 392; McAlmont *v.* McClelland, 14 S. & R. 359; Conroe *v.* Conroe, 11 Wright 198; Bridgeman *v.* Hopkins, 1 Am. L. Reg. N. S. 168.

*Golden & Neale*, for defendant in error, cited 1 Starkie on Slander 387; Walton *v.* Singleton, 7 S. & R. 454; Vanderlip *v.* Roe, 11 Harris 82; Smith *v.* Stewart, 5 Barr 372; Kennedy *v.* Lowry, 1 Binn. 393; Bash *v.* Sommer, 8 Harris 159; Elliott *v.* Boyles, 7 Casey 65; Kelly *v.* Cary, 3 Penna. R. 102; Smith *v.* Buckecker, 4 Rawle 295; Long *v.* Brougher, 5 Watts 439; Minesinger *v.* Kerr, 9 Barr 312.

The opinion of the court was delivered, January 7th 1867, by

WOODWARD, C. J.—After considerable reflection on the subject, we have come to the conclusion that the words as laid in the three first counts are not actionable in themselves, and there being no colloquium to connect them with extrinsic circumstances, they are not helped by the innuendo of larceny. Words are actionable in themselves only where an offence is imputed by them for which the party is liable to indictment and punishment either at common law or by statute.

The words in the 1st count are that the said David Byerly had "taken apples," or had "stolen apples," or had "taken apples without asking for them," or words to that effect, and in substance that the plaintiff had committed larceny.

Now, although according to Kennedy *v.* Lowry, 1 Binn. 393, as explained in Tipton *v.* Kahle, 3 Watts 93, it is sufficient to state the *substance* of words in the declaration—that is, the plaintiff need not set out every identical word spoken by the defendant, but may give the purport of what was said by him—yet the imputation, whether in substance or in *hœc verba*, must be of a distinct criminal offence, or it is not slanderous *per se*. "Taking apples" is not necessarily an indictable offence, nor even taking them without asking for them, for it may be only a trespass, whilst stealing apples is indictable. But when the slander charged is an alternative between trespass and larceny, an indictable offence is not necessarily imputed. And when with another disjunctive conjunction they are described as "words to that effect," the imputation becomes still more equivocal, for to "*that*

[Lukehart v. Byerly.]

effect" may mean either to the effect of trespass or larceny—these being the antecedents, with nothing in the relative to distinguish which is meant.   It is quite conceivable that the jury may have found under this count that the defendant only imputed a trespass to Byerly, and if so, the words were clearly not actionable.   When words *per se* do not import criminality, a *colloquium* is necessary to couple them with facts which give a particular hue to the meaning, and which by the help of innuendoes designate the persons and things alluded to, and disclose the charge of guilt: Starkie on Slander 391; Thompson v. Lusk, 2 Watts 17; Deford v. Miller, 3 Penna. R. 105; Gosling v. Morgan, 8 Casey 275. Then, if the evidence sustain the allegation, the verdict can be interpreted as finding the crime imputed; but where words are laid in an equivocal sense, as imputing a trespass or a felony, though proved as laid, the verdict cannot be considered as determining the sense in which they were understood.

These observations are equally applicable to the 2d and 3d counts, which are in the same alternative and equivocal terms as the first, and which are equally destitute of a *colloquium* to connect the equivocal phrases with extraneous circumstances which might fix the sense in which they were to be received.   These counts, which would have been held bad on demurrer, are not cured by the verdict, for the vice is radical in not unequivocally imputing an indictable offence.

The 4th, or additional count, imputes unequivocally the crime of larceny, and the words as laid are, we think, actionable; and the evidence was fit to go to the jury as sustaining the charge. Words are not to be received *in mitiori sensu*, but in the plain and popular sense in which the world in general understands them, and according to this rule, the words proved imputed the crime laid in the 4th count.

The defendant has no reason to complain of the rejection of the evidence referred to in the 4th assignment of error.   The general issue only had been pleaded, and under this, whilst the defendant might assail the general character of the plaintiff, he might not, as I understand our decisions, give evidence of particular reports, not even of the general currency of the particular charge which he took up and endorsed: Long v. Brougher, 5 Watts 439; Conroe v. Conroe and Wife, 11 Wright 201, and the cases cited.

But the court admitted evidence that the circumstances were communicated to the defendant before uttering the words for which he was sued, which was as much as he had a right to expect.   This kind of evidence may have tended to negative malice and to mitigate damages, and in both respects the advantage of it was offered to the defendant.   His complaint is ground-

less that the court did not go beyond this, and that the court said there was no sufficient evidence to repel the presumption of malice.

But the judgment cannot be sustained because the verdict was general, upon evidence that applied to all the counts, and we have seen that only one of them was good.   Had the verdict been taken upon the last count only, judgment might have been rendered thereon, but as it is a general judgment upon all the counts, it must be reversed.