14182

LILY v. BELK'S DEPARTMENT STORE

(182 S. E., 889)

*Messrs. Thomas, Lumpkin & Cain,* for appellant,

*Messrs. C. T. Graydon* and *W. M. Easterling,* for respondent.

December 2, 1935.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

This is an action for damages on account of certain alleged slanderous words spoken of and concerning the plaintiff by an agent of the defendant. The delict charged is set out in the complaint as follows: "That, heretofore, on or about the 11th day of November, 1933, this plaintiff went into the basement of the defendant corporation and purchased certain goods to the value of seventy-nine ($0.79) cents, and she with her husband left the establishment, or place of business of the defendant, and upon reaching Main Street, on which defendant's place of business is situated, they were stopped by a clerk named Mr. Carter, an agent and servant of the defendant, who at said time and place acting for the defendant, told this plaintiff to stop, and caught hold of this plaintiff and told her that 'he wanted to see what she had put in those bags, or packages,' and proceeded to search this plaintiff's bags, or packages, in the presence of people on the street."

It was also alleged that the attitude and acts of the defendant's agent, in the presence of numerous persons, were "intended to and did accuse this plaintiff of stealing something from the store," and were malicious and willful and held her up to public ridicule and scorn; and that such "accusations were false and untrue." The defendant's answer was a general denial.

On trial of the case, motions for a nonsuit and for a directed verdict were refused, and the jury found for the plaintiff $1,500.00 actual damages; the Court having withdrawn from them the issue of punitive damages. A motion for a new trial and for a reduction of the verdict, made on the ground that the amount awarded was "exorbitant and excessive," was also refused.

The appeal presents four questions for decision: (1) Was the Court in error in refusing to grant a nonsuit or to direct a verdict? (2) Were the words alleged to have been

spoken actionable in the circumstances surrounding their utterance? (3) Did Judge Whaley commit error in refusing to charge the defendant's third request? (4) Was the verdict excessive under the facts of the case? These we will consider in the order named.

First. The motion for a nonsuit was made on the ground that the testimony offered by the plaintiff was insufficient to constitute or support a cause of action for slander, as the language used did not charge the plaintiff with a crime and did not become actionable by virtue of the circumstances under which the statement was made.

We think the motion was properly overruled. The plaintiff testified that she and her husband and daughter, on November 11, 1933, went into the basement of Belk's Department Store in the City of Columbia, and that she there purchased a pair of overalls and her husband bought a work shirt; that these goods were wrapped separately, and she took one of the packages and her husband the other, and they went upstairs and out of the front door to the street; that on reaching the street she heard some one behind them say, in a rather high tone of voice, "wait there"; that she recognized this person as the clerk who had served them in the store; and that he ran up to them and "grabbed" her husband's package and tore it open, and found only the work shirt. She then testified: "I asked him what he was looking for when he tore my husband's package open, and he said, 'I want to see what you put in those packages,' and I said, 'Nothing, only what you sold us and wrapped up to give us,' and he took my package and tore the paper from around it like this (indicating) and handed it back to me and said: 'You all go ahead. We missed something out of the store and thought you all got it.'" She further stated that he "acted as if he thought we had stolen something out of the store and put it in those packages," and that all of this happened in the presence of her husband and daughter and in the

presence of others who were nearby, and that it so unnerved and embarrassed her that she did not know what to do. The plaintiff's husband and daughter corroborated the statements of Mrs. Lily as to what was said and done by the defendant's agent.

In Odgers on Libel and Slander (1st Am. Ed.), 116, we find: "It is not necessary that the defendant should, in so many words, expressly state the plaintiff has committed a particular crime. * * * Any words which distinctly assume or imply the plaintiff's guilt, or raise a strong suspicion of it in the minds of the hearers, are sufficient."

In *Davis v. Johnston,* 2 Bailey, 579, the Court said: "The rule in verbal slander, as to the construction of words, is that they are to be understood in their ordinary and popular meaning. If words are susceptible of two meanings, one imputing a crime, and the other innocent, the latter is not to be adopted, and the other rejected, as a matter of course. In such a case, it must be left to the jury to decide in what sense the defendant used them."

See, also, *Williamson v. Askin & Marine Co.,* 138 S. C., 47, 136 S. E., 21; *McClain v. Insurance Co.,* 150 S. C., 459, 148 S. E., 478; *Norman v. Stevenson Theatres,* 159 S. C., 191, 156 S. E., 357; *Palmerlee v. Nottage,* 119 Minn., 351, 138 N. W., 312, 42 L. R. A. (N. S.), 870.

In the last-named case, the Minnesota Court observed: "A charge need not be made directly—indeed, the venom and sting of an accusation is usually more effective when made by insinuations. The floating calumny which each reader may affix to any and every official act which his aroused suspicion may lay hold of is capable of inflicting graver injury and injustice than a direct, specific charge, which may be squarely met and refuted, if untrue."

In the light of these principles, and the testimony above detailed, it is clear that there was no error as complained of.

A directed verdict was asked for on two grounds, the first of which is disposed of by what has been said in our discus-

sion of the Court's refusal to grant a nonsuit. The second was as follows: That "the words are not actionable *per se*," and ."that there has been an entire failure to prove any special damages."

Originally the term "slander" applied both to oral and written defamation of character, but in modern usage it is distinguishable from the term "libel"; the two not being the same, "either in their elementary ingredients or in the penalties attached." 36 C. J., 1145. Whether the language used is defamatory depends upon the particular facts and circumstances of each case. If it is slanderous *per se*—that is, slanderous in itself—it needs no explanation or interpretation pleaded by way of innuendo, and carries with it the "presumption of falsity, of damages, and, if not published on privileged occasion, of malice." But where the words used are not actionable in themselves, they require the pleading of an innuendo to explain or determine their defamatory nature, and in such case are said to be actionable *per quod*. A distinction between these two classes of words is based on a rule of evidence, the difference as to proof required as to any resulting injury, and is due to the fact that two kinds of damages, general and special, are recognized by the law in suits for defamation.

In Newell on Libel and Slander, 833, § 745, we find:

"In the vast majority of cases proof of special damage is not essential to the right of action. Thus, it is not necessary to prove special damage—

"(1) In any action of libel.

"(2) Whenever the words spoken impute to the plaintiff the commission of any indictable offense.

"(3) Or a contagious disease.

"(4) Or are spoken of him in the way of his profession or trade, or disparage him in an office of public trust.

"(5) Or a want of chastity; or adultery or fornication.

"Such words, from their natural and immediate tendency

to produce injury, the law adjudges to be defamatory, although no special loss or damage is or can be proved. Though even in these cases, if any special damage has in fact accrued, the plaintiff may of course prove it to aggravate the damages."

And further, at page 834: "In all cases not included in the preceding section proof of special damage is essential to the cause of action, for the words are not actionable in themselves. As the words do not apparently and upon their face import such defamation as will be injurious, it is necessary that the plaintiff should aver and prove that some particular damage has in fact resulted from their use. Such damage, being essential to the action, must have accrued before the action is brought."

Stated succinctly, "general damages" are those which arise by inference of law and need not be proved by evidence, while "special damages" must always be pleaded and proved; and where the words used are not actionable *per se,* the plaintiff is confined to the special damage alleged, and he must prove it as laid or fail in his suit, as there are no general damages, in such case, to which he can have recourse.

In 37 C. J., 28, it is said: "Where defamatory matter imputing a crime is published in terms *prima facie* actionable and unequivocally expressive of the essential ingredients of the crime alleged to be charged, no prefatory averment of extraneous facts is required. But where the imputation does not *per se* import criminality and depends on extrinsic facts to explain it these facts must be set forth, and connected with the defamatory words so as to show that a crime was charged. If the words may be understood in a sense not criminal and there are no allegations to show that they were spoken in a criminal sense, they are not actionable."

To charge one orally, however, with the crime of larceny, it is not necessary that the words spoken of themselves constitute a technical charge of crime; it is

sufficient if the hearers naturally and presumably understood that such a charge was made.

In 18 A. & E. Ency. of Law (2d Ed.), at page 989, the following appears: "It is well settled that if the words used to express the charge are such, in the sense in which they would naturally be understood, as to convey to the minds of those to whom they are addressed, or to the readers of the words, the impression that the plaintiff has committed a crime, the words are actionable. It is only necessary that the words should, of themselves, or by reference to extraneous circumstances, be capable of the offensive meaning attributed to them."

It has been held, as is seen, that extrinsic circumstances may be alleged, and shown by the proof, which will render slanderous *per se* words which otherwise are not; and that if the words used convey to the minds of those to whom they are addressed, and would naturally be so understood, that the plaintiff has committed a crime, the words are actionable. While we deem it unnecessary to further review the testimony, we think, in view of the circumstances, as shown by the evidence, under which the alleged slander was uttered, that the motion to direct a verdict on the second ground was also properly refused.

Second. This question, from what we have already said, can only be answered in the affirmative.

Third. The trial Judge was requested by the defendant to instruct the jury as follows: "I charge you that if the publication is not slanderous *per se,* bad motive or malicious purpose to injure the plaintiff, is not enough without an allegation that it effected the evil purpose of conveying to those by whom it was heard, a charge injuriously affecting the character or business of the plaintiff."

It is urged that the Court's refusal to do so constitutes reversible error for the reason that the request "embodied correct principles of law and the omission of the same relieved the plaintiff from establishing one of the elements of

her case, namely, that the words were understood to be defamatory." We do not agree with this contention. An examination of the entire charge discloses that the trial Judge fully and correctly instructed the jury as to the law. The error, therefore, if any, was harmless, even if it should be conceded that the request, which stated a correct principle of law, was applicable to the case as made by the plaintiff.

Fourth. The matter of reducing the amount of the verdict by granting a new trial *nisi* was peculiarly within the discretion of the trial Judge; and we cannot say, under the facts as disclosed by the evidence, that there was an abuse of discretion amounting to manifest error of law, and for this reason this assignment of error is overruled.

The judgment of the Court below is affirmed.

MESSRS. JUSTICES CARTER and BONHAM and MESSRS. ACTING ASSOCIATE JUSTICES E. C. DENNIS and C. J. RAMAGE concur.