14998

FLOWERS v. PRICE

(6 S. E. (2d), 750)

374

April, 1939.

*Mr. C. E. Gardner,* for appellant,

*Messrs. Samuel Want, James S. Verner* and *Sam Rogol,* for respondent,

January 9, 1940.

*Per curiam.*

This is an action for damages on account of certain alleged slanderous statements made of and concerning the plaintiff by an agent of the defendant Price.

Succinctly stated, the complaint alleged that Price in 1938 operated a tobacco sales warehouse in the Town of Darlington, and that on August 28th of that year plaintiff carried a load of tobacco, grown by him and one James Gandy on a share crop basis, to such warehouse for the purpose of having it sold there; that he noticed, in standing around, that defendant's agent was weighing short the tobacco of others, and that he requested the next morning, August 29, 1938, before his tobacco should be offered for sale, that it be reweighed; that this being done as to a part of it, it was found that several baskets weighed more than they did the night before; that the defendant's agent, after some words thereabout, cursed the plaintiff and told him that if he was not satisfied to take his tobacco to some other warehouse, which he did; that on the same date, August 29th, the plaintiff happened to go back into defendant's warehouse, and the agent asked him "if he had been telling that they were short weighing tobacco or cheating people out of tobacco," and that he told him that "he had the proof that his was weighed short by defendant"; and that the defendant's agent then and there said in the presence of the said James Gandy and others: "Someone stole thirty pounds of another man's tobacco back here in the warehouse and how do we know that you did not take his tobacco and put it on yours and carry it over to the other warehouse."

It was also alleged that this statement of the agent of the defendant was malicious and false, and was intended to and did charge the plaintiff with the doing of an act in-

volving moral turpitude, to wit, the commission by him of of the crime of theft or larceny, which is an indictable offense—"all of which was so understood by the said James Gandy and others whose names plaintiff does not know"; that such defamatory statement was published by defendant with the malicious intent to harm and injure the plaintiff, and has done so, in his business, credit, character and reputation, and was made by the agent of the defendant "while acting within the apparent and actual scope of his authority."

The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action in that (a) the alleged slanderous language was and is not slander *per se,* and is not rendered slanderous in fact by the circumstances set forth in the complaint; (b) in that it does not appear from the complaint that at the time of the utterance of the alleged slander by an agent of the defendant, such agent was in fact and in law engaged in the performance of duties for the defendant; (c) in that the alleged slander was provoked by the plaintiff and (d) in that the complaint fails to show that the plaintiff suffered any loss or damage by reason of the utterance of the alleged slanderous words.

Judge Dennis, who heard the matter, sustained the demurrer. He held that the parties were engaged in a verbal altercation; and that the words alleged to have been sued by the defendant's agent did not constitute a direct charge of a crime. Not only this, but that they lacked the necessary implication of larceny on the part of the plaintiff which must appear in order to make them actionable, as it was wholly improbable that any one hearing the language in the circumstances under which it was used could have inferred that the defendant's agent intended to charge the plaintiff with the crime of larceny. He did not pass upon the ground of the demurrer, namely, that the complaint does not allege that the agent who uttered the claimed slander was at the time

engaged in the performance of his duties for the defendant, stating that it was not necessary for him to discuss this ground in disposing of the case. The plaintiff appeals.

"A demurrer is a proper procedure to test the actionable character of the charge and it will only be sustained where the Court can affirmatively say that the publication is incapable of any reasonable construction which will render the words defamatory;" and "to the extent that the demurrer tests the actionable quality of the words it is an admission of the allegations of the complaint." 37 C. J., 50, 51.

In Odgers on Libel and Slander (1st Am. Ed.), 116, we find: "It is not necessary that the defendant should, in so many words, expressly state the plaintiff has committed a particular crime. * * * Any words which distinctly assume or imply the plaintiff's guilt, or raise a strong suspicion of it in the minds of the hearers, are sufficient."

And 18 A. & E. Ency. of Law (2d Ed.), at page 989: "It is well settled that if the words used to express the charge are such, in the sense in which they would naturally be understood, as to convey to the minds of those to whom they are addressed, or to the readers of the words, the impression that the plaintiff has committed a crime, the words are actionable. It is only necessary that the words should, of themselves, or by reference to extraneous circumstances, be capable of the offensive meaning attributed to them."

At page 1204, 36 C. J., the writer says: "As a general rule to charge one orally with the crime of larceny is actionable *per se*. It is not necessary that the words spoken should by themselves constitute a technical charge of crime or that there should be a directly affirmative charge, it being sufficient if the words would naturally and presumably be understood by the hearers as charging the crime of larceny."

See, also, Newell on Libel and Slander, 883; *Davis v. Johnston,* 2 Bailey, 579; *Rowell v. Johnson,* 170 S. C., 205, 170 S. E., 151; *Lily v. Belk's Department Store,* 178 S. C., 278, 182 S. E., 889; *Merritt v. Great A. & P. Tea Co.,* 179

S. C., 474, 184 S. E., 145; *Leevy v. North Carolina Mutual Life Insurance Company,* 184 S. C., 111, 191 S. E., 811.

Applying the above-stated principles, which are applicable here, we are of opinion that the complaint in this case states a cause of action for slander. We do not think that the alleged remark was merely the result of an altercation between the parties, as is argued by counsel for respondent. The allegations of the complaint, all of which must be considered, are to the effect that the question of weighing short, which had previously arisen between the parties, had been disposed of upon the removal of his tobacco by plaintiff to another warehouse, that the defendant's agent, however, upon the return of plaintiff to defendant's warehouse, where, under the facts alleged, he had a right to go, brought up the matter again by questioning Flowers with regard to certain reports he had heard thereabout, and at that time made the alleged slanderous remark, to wit: "Some one stole thirty pounds of another man's tobacco back here in the warehouse and how do we know that you did not take his tobacco and put it on yours and carry it over to the other warehouse." When all the alleged facts and circumstances are considered, we think that these spoken words, and as spoken, may properly be construed as charging the plaintiff with the commission of the crime of larceny, and could have been so understood by those who were within hearing, as alleged in the complaint. As pointed out in *Lily v. Belk's Department Store, supra* [178 S. C., 278, 182 S. E., 892], "it has been held * * * that extrinsic circumstances may be alleged * * * which will render slanderous *per se* words which otherwise are not; and that if the words used convey to the minds of those to whom they are addressed, and would naturally be so understood, that the plaintiff has committed a crime, the words are actionable."

The question of agency, whether the person who uttered the alleged slander could by his acts bind the defendant, while argued by counsel for respondent, is not properly before us. This ground of the demurrer, as

already indicated, was not passed upon by Judge Dennis. We, therefore, decline to consider it.

The judgment of the Circuit Court is reversed and the case remanded for trial.