## SANDIFER v. ELECTROLUX CORPORATION.

### Civil Action No. 1832.

District Court, E. D. South Carolina,
Columbia Division.

July 12, 1948.

W. S. Weatherford, Jr., of Columbia, S. C., and Murchison & West, of Camden, S. C., for plaintiff.

McKay & McKay, of Columbia, S. C., for defendant.

TIMMERMAN, District Judge.

I have for consideration the motion of the plaintiff for a new trial. This is an action for damages based upon an alleged slander. The case was tried with a jury April 15, 16, 1948. The jury returned a verdict for the defendant.

Upon the trial of the case I held and instructed the jury that the words complained of as having been spoken of and concerning the plaintiff by an agent of the defendant were not defamatory per se and consequently that the plaintiff had the burden of proving by the preponderance of the evidence extrinsic facts warranting a reasonable inference that such words were intended to and did defame the plaintiff and that upon such a finding the plaintiff would be entitled to recover only such special damages as he had alleged and proved by the preponderance of the evidence.

Following the instructions to the jury counsel for the parties were afforded an opportunity out of the hearing of the jury to except to the charge. Plaintiff's counsel noted an exception to that part of the charge which limited plaintiff's recovery to special damages. That exception is the principal ground of the motion for a new trial.

Plaintiff's counsel contend that the Court should have submitted to the jury the issue of whether or not the words complained of were defamatory per se, and should have instructed the jury to award general, or at least, nominal, damages, if they found the alleged words to have been uttered by an agent of the defendant and that they were defamatory per se.

In Stokes v. Great A. & P. T. Co., 202 S.C. 24, 23 S.E.2d 823, 825, a recent slander case, it was held that "An innuendo cannot make words actionable which are not so by their plain and ordinary meaning," citing 33 Am.Jur. 220, 221.

The South Carolina case most nearly in point is Bell v. Clinton Oil Mill, 129 S.C. 242, 124 S.E. 7, 8. In that case there were two versions of the words used, but they are strikingly similar. "You had better tell Bell that the amount due by him is going to be reported to the bonding company and that he had better pay it up at once" was one version, and the other was, "You might get word to Theo. [referring to the plaintiff] that the company is going to place his account with the bonding company". The words complained of in the instant case are, "I want the machines now or I want the money, or I will report you to the bonding company immediately." As

contended by plaintiff's counsel, the significant words are, "I will report you to the bonding company."

In the Bell Case the plaintiff alleged that the defendant intended to and did charge the plaintiff with having committed a breach of trust, with having committed a crime against the laws of South Carolina, and that said language was so understood by those who heard it. In the instant case it is alleged that the words used "were willfully and maliciously slanderous, and were capable of and did by insinuation and innuendo charge plaintiff with dealing dishonestly with defendant corporation, or with having converted funds or property of defendant corporation to his own use, or with being guilty of some crime." It will thus be seen that the two cases are factually almost identical. In the Bell Case it was stated by the Court, in an opinion without dissent, that "The language quoted does not upon its face impute to the plaintiff the commission of a crime; it is therefore not actionable per se. If it can be construed as actionable, it must be by reason of extrinsic facts which, taken in connection with the language used, disclose an intention on the part of the utterer to charge the plaintiff with having committed a crime." In the Bell Case the verdict was for the defendant and the Supreme Court affirmed the judgment entered thereon. In that case, as in the instant case, the plaintiff relies heavily on the mentioning of a bond. The conditions of the two bonds are not materially different. In neither was the liability of the insurer limited to criminal conduct.

Lily v. Belk's Department Store, 178 S. C. 278, 182 S.E. 889, 890, followed the lead of the Bell Case although it was not cited in the opinion. Mrs. Lily, the plaintiff, and her husband and daughter, had been in the defendant's department store. She and her husband had made purchases. They left the store and as they reached the sidewalk an employee of the defendant rushed up to them and "grabbed" the husband's package and opened it and then took the plaintiff's package and tore it open, stating, among other things, "We missed something out of the store and thought you all got it." This occurred in the presence of the family group and numerous others then on the sidewalk. Mrs. Lily further testified that defendant's employee "acted as if he thought we had stolen something out of the store and put it in those packages." She was fully corroborated by her husband and daughter and their packages contained no stolen articles, only such articles as they had purchased from the defendant and paid for. A verdict was returned in favor of the plaintiff and on appeal the judgment entered thereon was affirmed. The first error alleged was to the refusal of the trial judge to grant the defendant's motion for a non-suit on the ground, as stated by the Court, that "the language used did not charge the plaintiff with a crime and did not become actionable by virtue of the circumstances under which the statement was made." The Supreme Court, as to that exception, said: "We think the motion was properly overruled"; and then, after reciting the facts as briefed in part above, went on to say:

"In Odgers on Libel and Slander (1st Am.Ed.) 116, we find: 'It is not necessary that the defendant should, in so many words, expressly state the plaintiff has committed a particular crime. * * * Any words which distinctly assume or imply the plaintiff's guilt, or raise a strong suspicion of it in the minds of the hearers, are sufficient.'

"In Davis v. Johnston, 2 Bailey S.C., 579, the court said: 'The rule in verbal slander, as to the construction of words, is, that they are to be understood in their ordinary and popular meaning. If words are susceptible of two meanings, one imputing a crime, and the other innocent, the latter is not to be adopted, and the other rejected, as a matter of course. In such a case, it must be left to the jury to decide in what sense the defendant used them.'

\* \* \* \* \* \*

"In the light of these principles, and the testimony above detailed, it is clear that there was no error as complained of."

The Court next considered the defendant's contentions that "the words are not actionable per se", and "that there has been an entire failure to prove any special damages," stating:

"Whether the language used is defamatory depends upon the particular facts and circumstances of each case. If it is slanderous per se—that is, slanderous in itself—it needs no explanation or interpretation pleaded by way of innuendo, and carries with it the 'presumption of falsity, of damages, and, if not published on privileged occasion, of malice.' But where the words used are not actionable in themselves, they require the pleading of innuendo to explain or determine their defamatory nature, and in such case are said to be actionable per quod. *A distinction between these two classes of words is based on a rule of evidence, the difference as to proof required as to any resulting injury, and is due to the fact that two kinds of damages, general and special, are recognized by the law in suits for defamation.*" (Emphasis added)

"In Newell on Libel and Slander, 833, § 745, we find:

" 'In the vast majority of cases proof of special damages is not essential to the right of action. Thus, it is not necessary to prove special damage—

" '(1) In any action of libel.

" '(2) Whenever the words spoken impute to the plaintiff the commission of any indictable offense.

" '(3) Or a contagious disease.

" '(4) Or are spoken of him in the way of his profession or trade, or disparage him in an office of public trust.

" '(5) Or a want of chastity; or adultery or fornication.

" 'Such words, from their natural and immediate tendency to produce injury, the law adjudges to be defamatory, although no special loss or damage is or can be proved. Though even in these cases, if any special damage has in fact accrued, the plaintiff may of course prove it to aggravate the damages.'

"And further, at page 834: 'In all cases not included in the preceding section proof of special damage is essential to the cause of action, for the words are not actionable in themselves. As the words do not apparently and upon their face import such defamation as will be injurious, it is necessary that the plaintiff should aver and prove that some particular damage has in fact resulted from their use. Such damage, being essential to the action, must have accrued before the action is brought.' "

Then, as to general damages, the Court had this to say:

"Stated succinctly, 'general damages' are those which arise by inference of law and need not be proved by evidence, *while 'special damages' must always be pleaded and proved;* and where the words used are not actionable per se, the plaintiff is confined to the special damage alleged, and he must prove it as laid or fail in his suit, *as there are no general damages, in such case, to which he can have recourse.* (Emphasis added)

"In 37 C.J. 28, it is said: 'Where defamatory matter imputing a crime is published in terms prima facie actionable and unequivocally expressive of the essential ingredients of the crime alleged to be charged, no prefatory averment or extraneous facts is required. But where the imputation does not per se import criminality and depends on extrinsic facts to explain it these facts must be set forth, and connected with the defamatory words so as to show that a crime was charged. If the words may be understood in a sense not criminal and there are no allegations to show that they were spoken in a criminal sense, they are not actionable.' "

By "allegations" the Court undoubtedly meant allegations of fact as distinguished from conclusions of a pleader.

■ While the Lily Case apparently recognizes the doctrine that extrinsic circumstances alleged and proved may render slanderous per se words which otherwise are not, that is to say, spoken words may be deemed slanderous per se and actionable as such if they, considered in the light of the circumstances under which they were uttered, "convey to the minds of those to whom they are addressed, and would naturally be so understood, that the plaintiff has committed a crime." But since the Bell Case held that words similar to those used in the instant case and uttered under similar circumstances, were not actionable per se, a like ruling was made in this case and no direct attack has been made

on that ruling in any exception to the instructions given the jury or in the motion for a new trial now under consideration, except as incidental to the exception hereinabove noted.

In Galloway v. Cox, 172 S.C. 101, 172 S.E. 761, 764, it was held that "A creditor still has the right to ask his debtor to pay what he owes without being subject to an action for libel." For greater reasons the rule would apply to a slander case.

In Merritt v. Great A. & P. T. Co., 179 S.C. 474, 184 S.E. 145, 147, a suit for slander based on a charge of theft, the Court, in affirming a judgment for the plaintiff, said:

" 'As a general rule, to charge one orally with larceny is actionable per se. It is not necessary that the words spoken should by themselves constitute a technical charge of crime or that there should be a directly affirmative charge, it being sufficient if the words would naturally and presumably be understood by the hearers as charging the crime of larceny.' 36 C.J. 1205. 'As a general rule, it is the province of the Court to determine what constitutes defamation abstractly. Hence, if, the language is plain and unambiguous, it is a question of law whether or not it is defamatory. If the language is obviously actionable per se, it is the duty of the Court so to instruct the jury as a matter of law; and it is not for the jury to say what defendant meant by making the charge. But if the language is ambiguous and susceptible of two meanings, one defamatory and the other not, it is for the jury to decide in what sense it was used.' 37 C.J. 101. In other words, it may be a question of mixed law and fact and for the jury to say whether the words were slanderous per se. Lily v. Bolk's Dept. Store, 178 S.C. 278, 182 S.E. 889, a case almost exactly in point; Rowell v. Johnson and S. H. Kress & Co., 170 S.C. 205, 170 S.E. 151; Jackson v. Record Pub. Co., 175 S.C. 211, 178 S.E. 833; Norman v. Stevenson Theatres, 159 S.C. 191, 156 S.E. 357; Turner v. Montgomery Ward & Co., 165 S.C. 253, 163 S.E. 796; McClain v. Reliance Life Ins. Co., 150 S.C. 459, 148 S.E. 478; Williamson v. Askin & Marine Co., 138 S.C. 47, 136 S.E. 21. And if

slanderous per se, actual damages are presumed and need not be proved to justify a verdict for punitive damages. Fitchette v. Sumter Hardwood Co., 145 S.C. 53, 142 S.E. 828."

In the instant case, as in the Bell Case, there was no question of mixed law and facts. Upon the face of the pleadings and under the proof in the instant case, the alleged defamatory words were clearly not actionable per se, and no partisan construction of them can make them so. No extrinsic fact was alleged or proved that indicated an intention to charge the plaintiff with a crime. The one fact, as distinguished from opinion, upon which the plaintiff relies is the existence of the bond; but as pointed out in the Bell Case that is not sufficient. It was there stated that "if the bond covers delicts *free* from criminal intent, as well as those *with* such intent, a mere reference to the demand upon a bonding company for money due by the plaintiff furnishes no inference of an intention to charge the plaintiff with a crime." In this case, as in the Bell Case, there was no allegation or proof that any hearer of the alleged words knew the terms of the bond. For aught they knew the bonding company might have been the guarantor of a debt. Furthermore the bond in this case, as in the Bell Case, "covers delicts *free* from criminal intent, as well as those *with* such intent", and "a mere reference to the demand upon a bonding company for money due by the plaintiff furnishes no inference of an intention to charge the plaintiff with a crime."

Nettles v. MacMillan, 210 S.C. 200, 42 S.E.2d 57, is authority for the following propositions:

(a) That in case of ambiguity in alleged slanderous words the issue of whether or not the words were used in a defamatory sense should be left to the jury;

(b) The fact that a plaintiff fails to offer a witness who heard the alleged ambiguous words to testify as to his understanding of the meaning of such words is not of itself ground for a non-suit; and

(c) That it would be for the jury to decide whether the alleged ambiguous words were in fact defamatory. In the light of

all surrounding circumstances, however, the Nettles Case is not authority for the submission of the issue of general damages to the jury since the words complained of plainly were not defamatory per se.

The motion should be refused, and it is so ordered.