## 17175

SHEPARD K. NASH, Respondent, v. H. P. SHARPER, B. T. WILLIAMS, S. T. ROBINSON, J. H. NELSON, L. J. PETERSON, J. J. BURRELL, F. C. JAMES, I. DeQUINCY NEWMAN, E. M. McDONALD, EDWARD C. JONES, SR., S. J. McDONALD, SR., JAMES DANIELS, and the NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, SUMTER CHAPTER, an unincorporated Association, Appellants.

(93 S. E. (2d) 457)

*Messrs. Lincoln C. Jenkins, Jr.,* of Columbia, *for Appellant,* and *Robert L. Carter, of Counsel,*

*Messrs. Weinberg & Weinberg, C. M. Edmunds,* and *Robert O. Purdy,* all of Sumter, *for Respondent,*

June 18, 1956.

STUKES, Chief Justice.

The complaint in this action for damages for libel will be published herewith, omitting the caption and prayer for judgment.

The defendants demurred upon the general ground that the complaint does not state a cause of action. Upon argument, the demurrer was overruled by formal order and defendants have appealed. They made five points in the lower court, four of which have been preserved by excep-

tions upon appeal. We shall discuss and dispose of them in the order in which they are presented in the brief.

It is first contended that the alleged libelous statement was in the alternative, and therefore not actionable. The following is quoted in the brief from the 4th edition of Newell, Slander & Libel, page 273: "Where a charge is made in the alternative, ordinarily both alternatives must be defamatory to render the charge actionable." Two rather old cases are cited by the author in the footnotes to sustain the text. In *Blackwell v. Smith,* 8 Mo. App. 43, it was held that the following statement was not actionable: "You are a thief, or you got the book from a thief." There was the same result in *Lukehart v. Byerly,* 53 Pa. 418, where it was charged by the defendant that the plaintiff had taken apples or had stolen apples or had taken apples without asking for them. We do not approve or disapprove these authorities; they are inapplicable to the facts which are alleged in the instant complaint.

Appellants omitted from the quotation in their brief the remainder of the section of Newell, which, indeed, is a part of the sentence from which they quoted; it follows:

"* * * but if the statement taken as a whole, is such that it will not admit of any other reasonable construction except that the person referred to in such statement participated in or connived at the doing of the main act charged which was libelous, then the entire statement is libelous."

In *Dennison v. Daily News Pub. Co.,* 1910, 86 Neb. 862, 126 N. W. 764, 765, the offending publication was, " 'this man either threw the bomb, hired some one to throw it, or knows who did it.' " The court instructed the jury that it was libelous *per se,* to which defendant excepted on appeal after verdict and judgment for plaintiff. The following reasoning and conclusion of the court, in overruling the exception, are applicable to the facts of the case in hand, as they are alleged in the complaint:

"While we concede that ordinarily a charge made in the alternative might not be libelous *per se,* we think that the language here quoted, taken in connection with the whole article, is not susceptible of any other reasonable construction except that 'this man' either threw the bomb, hired some one to throw it, or had guilty knowledge as to who did it. In other words, we think it fairly charges that 'this man' was an active or at least a passive participant, in, and connived at the throwing of that bomb. The court therefore did not err in instructing that this language constitued a libel *per se.*"

*Flowers v. Price,* 192 S. C. 373, 6 S. E. (2d) 750, 752, was an action for slander. The offending statement was: " 'Some one stole thirty pounds of another man's tobacco back here in the warehouse and how do we know that you did not take his tobacco and put it on yours and carry it over to the other warehouse.' " Demurrer to the complaint was overruled and the following quoted with approval from Odgers on Libel and Slander (1st Am. Ed.) 116: "It is not necessary that the defendant should in so many words, expressly state the plaintiff has committed a particular crime. * * * Any words which distinctly assume or imply the plaintiff's guilt, or raise a strong suspicion of it in the minds of the hearers, are sufficient.' "

*Forbes v. Johnson,* 11 B. Mon. 48, 50 Ky. 48, was concerned with an alleged libel relating to a promissory note which had been held by two brothers as partners. It was generally charged by the defendants that the note had been fraudulently altered, without identifying the brother who was claimed to have made the fraudulent alteration. One of them brought the action for damages for libel and a ground of demurrer was that there was not enough in the declaration (complaint) to justify the innuendo (colloquium) that the charges were intended to be made against the plaintiff. This ground of demurrer was overruled and the court said:

"And if this were not so, still the charge if not confined to the plaintiff, evidently imports that the fraudulent altera-

tion was committed by either John or James Forbes, and as it does not discriminate between them but is equally a charge against each, we are of opinion that it is in effect a charge against both, and that either and each may sue for the libel, applying the charge to himself. If each has not the right to maintain the action for words importing that one or the other of them (without further discrimination), had been guilty of a crime, it cannot be maintained by either. And the wilful libeller might shield himself from responsibility by making his charges in the alternative against two, though in the fact the mischief to each would be substantially the same as if he had charged both jointly or each separately. A charge that one or the other of two persons committed a crime, is in truth, an imputation against both, and gives to each a right of action. It was not necessary to introduce any extraneous matter in order to point the charge against the plaintiff, because the alleged libel itself contains enough to authorize its application to him."

The complaint in the case at bar contains allegations (in paragraphs 3 and 4) that plaintiff was the "official(s)" referred to in the publication and was well known to the defendants and to the public to be such.

*Atkinson v. Hartley,* 1 McCord 203, cited by appellants, is not in point. The witnesses, who heard the allegedly slanderous statement there, were uncertain whether the words were such as to constitute slander or were, in fact, other words which were not actionable. The distinguishing difference between that case and this is manifest.

The second assignment of error is that it does not appear upon the face of the complaint that the statement was published of and concerning plaintiff. We think it entirely untenable. The complaint alleges in paragraph 3 the professional representation of the school districts by the plaintiff as attorney, and that from prior newspaper publications it was generally known that the plaintiff, in that capacity, was the only person who was releasing the retractions. Moreover, it is alleged in the latter portion of paragraph 4 that

the release to the press of the specified retraction which appears to have caused the publication of the libel of plaintiff was accompanied by a statement in the same issue of the newspaper that the release was by plaintiff as attorney for the school board.

To support an action for a libel, the plaintiff's name need not be mentioned in the writing; it is sufficient that there is a description of, or reference to, him, by which he may be known. *Clark v. Creitzburgh,* 4 McCord 491.

It may be pointed out that the allegations of the complaint, just referred to, are in the nature of colloquium, the common law necessity for which may be obviated in proper cases by compliance by the pleader with the terms of section 10-676 of the Code of 1952, which follows:

"In an action for libel or slander it shall not be necessary to state in the complaint any extrinsic facts for the purpose of showing the application to the plaintiff of the defamatory matter out of which the cause of action arose but it shall be sufficient to state generally that the same was published or spoken concerning the plaintiff. If such allegation be controverted the plaintiff shall be bound to establish on the trial that it was so published or spoken."

Appellants' third contention is that it does not appear upon the face of the complaint that the statement is capable of construction as libelous. However, we think that the inference is plain that plaintiff dishonestly worded the retractions. Referring again to the 4th edition of Newell, the following is found in Sec. 140, page 173: "The duties of attorneys requiring integrity and knowledge of the law, any general imputation of dishonesty * * * will of course be defamatory."

An attorney brought action for libel in *Pierce v. Inter-Ocean Casualty Co.,* 148 S. C. 8, 145 S. E. 541, 542, upon a published letter which contained the following: " 'And it seems that some of these negroes through your influence are

having their policies canceled. * * * Likewise we do not think you as attorneys should encourage policyholders to try to take advantage of this or any other insurance companies.'" Direction of verdict for defendant was refused and the court said: "The language used in the alleged libelous letter was of a defamatory character, charging the plaintiff with dishonest dealing and unprofessional conduct, and clearly actionable." Dissenting upon other points, Mr. Justice Cotheran said as to the libel: "The most important question in the case is whether the expressions used in the Cleland letter are libelous. They were made in reference to an attorney who was engaged in endeavoring to enforce the rights of her clients as she and they considered them; they charged her with practically setting up false claims for them, which she suggested and induced; a breach of honest dealing and professional integrity, and unquestionably were actionable. In *Davis v. Davis,* 1 Nott & McC. 290, the syllabus is: 'Any words spoken of a person in relation to his trade or profession, which tend to impair his credit, or which charge him with fraud or indirect dealing, are actionable.'"

The first sentence of the opinion in the last cited case, *Davis v. Davis,* is: "The law is clear, that words, not actionable in the case of a common person, may become so, when spoken of another, in relation to the office he fills or the trade or profession which he carries on." It is followed by citations of decisions which involved plaintiffs of various trades and professions.

*Carwile v. Richmond Newspapers, Inc.,* 196 Va. 1, 82 S. E. (2d) 588, 592, sustained an action for libel by an attorney who had instigated a grand jury investigation of the police department for graft and corruption. The jury reported but did not return an indictment. The publication was to the effect that the vindicated officials would not say whether they would recommend action against plaintiff by the State Bar, which could request disbarment of an attorney for unprofessional conduct. We quote from the opinion:

"Hence, words and statements which charge an attorney at law with unethical or unprofessional conduct and which tend to injure or disgrace him in his profession are actionable *per se*. *High v. Supreme Lodge, etc.*, 214 Minn. 164, 7 N. W. (2d) 675, and the appended annotation in 144 A. L. R. 814; 33 Am. Jur., Libel and Slander, § 76, p. 88; 53 C. J. S., Libel and Slander, § 38, p. 85. * * * While the defamatory language does not in express terms charge the plaintiff with a breach of his professional honor, yet, when aided by the inneundo, operating within the scope of its legitimate functions, it does impute conduct tending to injure him in his profession."

Finally, appellants contend that the statement is incapable of construction as libelous concerning the plaintiff in his professional capacity as an attorney at law. Again, we find no merit.

Plaintiff's professional connection with the transaction is fully alleged in the complaint; and honesty, which it impugns, is the first requisite qualification of an attorney. Reference may be had again to the excerpt from Newell which is quoted in the above discussion of appellants' third question, and to the cited decisions in which attorneys at law were plaintiffs.

All of appellants' questions on appeal have been carefully considered and have been found to be without merit. The demurrer to the complaint was properly overruled.

Affirmed.

TAYLOR, OXNER, LEGGE and MOSS, JJ., concur.

### Complaint

Plaintiff, complaining of the defendants above named, alleges:

1. That the plaintiff is a resident of Sumter County, South Carolina, and is an attorney at law, practicing his profession in the City and County of Sumter, said State;

2. That the individual defendants are residents of Sumter County, South Carolina, and that the National Association for the Advancement of Colored People, Sumter Chapter, is an unincorporated association, and that the individual defendants constitute the Executive Committee of the said National Association for the Advancement of Colored People, Sumter Chapter, being the executive officers of said association, and empowered by it to transact all business for said unincorporated association;

3. That heretofore petitions were filed with the Board of Trustees of School District No. 2 and the Board of Trustees of School District No. 17, both of Sumter County, being the only two school districts in Sumter County, by some 80 petitioners to the Board of Trustees of School District No. 17, and some 40 petitioners to School District No. 2, said petitions seeking the admission of the children of said petitioners to the white schools of School District No. 2 and of School District No. 17; that the trustees of both of said school districts employed plaintiff to represent them in connection with said petitions and to advise with them in regard thereto; that subsequent thereto many of the signers of said petitions, having become aware of the nature of the petitions signed by them, or for other reasons, came to the office of plaintiff for the purpose of withdrawing their respective names from said petitions, and that as such names were withdrawn, plaintiff, as counsel for the two said school districts of Sumter County, released to the press various letters of withdrawals signed by persons who signed said original petitions filed with said school districts, and that the name of this plaintiff as the person who released said letters requesting withdrawal of names from said petitions, was printed in the Sumter Daily Item, the only newspaper of Sumter County, and other papers in the State of South Carolina, and it was well known throughout the County of Sumter and also to the defendants that plaintiff was the only person releasing said withdrawals from said petitions for integration of the races in the public schools of Sumter County;

4. That on or about September 9, 1955, one Roland E. Blanding, who had signed the original petition for integration, came to the office of the plaintiff and, in the absence of plaintiff, caused to be written a letter withdrawing his name from the petition submitted to the Board of Trustees of School District No. 17 for the integration of the colored and white children in the same schools, stating in said letter: "I read the petition which was presented to me very carefully and it did not request integration of the two races. The petition I signed requested the leaders from both races to talk over the problems which have arisen in an attempt to find a solution." Just prior to the signing of the said letter by the said Roland E. Blanding, requesting that his name be withdrawn from said petition for integration of the races in the white schools, the plaintiff returned to his office and saw the said Roland E. Blanding reading said letter and saw him sign the same, and subsequent thereto, this plaintiff released a copy of said letter to the press and the same was published in the Sumter Daily Item, said newspaper stating in said issue that said letter and others published therewith had been released to said paper by plaintiff, as attorney for the said School Board;

5. That subsequently the individual defendants acting for themselves and as agents and Executive Committee of the National Association for the Advancement of Colored People, Sumter County, wrote a letter to the Editor of the Sumter Daily Item, and caused said letter to be published in said newspaper, which has wide circulation in Sumter and adjoining Counties, on Tuesday afternoon, September 13, 1955, on the front page thereof, in which letter, after referring to the letter of the said Roland E. Blanding, withdrawing his name from said petition for integration of the races in the schools of Sumter County, defendants stated as follows:

"He not only signed after reading the petition, but on one occasion directed others how to sign them. Either he is double-talking or the officials who released his statements to

the press are wording these retroactions to fit the Citizens' Committees."

6. That the said article so written and caused to be published by the defendants was false, and was maliciously caused to be published by the defendants, with the purpose and intent to injure the reputation of plaintiff as an attorney at law, from which profession plaintiff derives his livelihood, and did charge and was intended to charge, and was so understood by those who read the same, that the plaintiff, as an attorney at law, did, with knowledge of the falsity thereof, willfully induce the said Roland E. Blanding to make false and untrue assertions and statements of fact, with the motive of serving the purpose of the Citizens' Committee, and that by reason thereof plaintiff has been injured in his profession as a practicing attorney;

7. That by reason of the foregoing the defendants have damaged the plaintiff, both actual and punitive, in the sum of $120,000.00.