STATE, Plaintiff in error, vs. EVJUE, Defendant in error.

*May 28—July 1, 1948.*

For the plaintiff in error there were briefs by the *Attorney General, William A. Platz,* assistant attorney general, and *Edwin M. Wilkie,* district attorney of Dane county, and oral argument by *Mr. Platz* and *Mr. Wilkie.*

*W. Wade Boardman* of Madison, for the defendant in error.

ROSENBERRY, C. J.  It is considered that attention should first be directed to some matters of pleading and practice in order to keep the record straight.  Sec. 355.09, Stats., provides:

"Any objection to a prosecution or the sufficiency of an indictment or information that may be raised by motion to quash, demurrer, plea in abatement, or special plea in bar, shall be so raised before a jury is impaneled or testimony taken, and unless so raised, shall be deemed waived. . . ."

The so-called pleas in bar raise no question except that relating to the validity of sec. 348.412, Stats., on the ground that it abridges the freedom of the press and deprives a party of due process and equal protection of the laws contrary to the constitution of the United States and the state of Wisconsin. While it is alleged in the fifth and sixth pleas that if applied to the factual situation and to the defendant in the instant case the said section is invalid, the paragraphs refer to matters which may properly be considered on the trial under the plea of not guilty.

The matter presented to the trial court and the question considered by the trial court is not raised by a special plea in bar. The rule is that in a criminal prosecution the accused may, and should, plead specially in bar any matter in confession and avoidance constituting a defense not admissible under the plea of not guilty. In the case of *United States v. Murdock*, 284 U. S. 141, 52 Sup. Ct. 63, 76 L. Ed. 210, the defendant was indicted for refusal to testify and interposed a special plea in bar averring that he ought not to be prosecuted under the indictment because if he had answered the questions put to him he would have given information that would have compelled him to become a witness against himself in violation of the Fifth amendment, and caused him to be subjected to prosecution in the court below for violation of various laws of the United States as shown by a transcript of the questions asked and answers given, a statement of which he included in his plea. The United States demurred to the plea on the ground that it failed to show that the information demanded would have incriminated or subjected the defendant to prosecution under federal law, and that defendant waived his privilege under the Fifth amendment. The court overruled the demurrer and entered judgment discharging the defendant, and the United States appealed from the judgment of the district court

to the supreme court of the United States. After some discussion the court said (284 U. S. 141, 149) :

"We are of the opinion that leave to file the plea should have been withheld. The proceedings below are indicated by a chronological statement printed in the margin. After demurrer—not shown by the record to have been disposed of—and motions for a bill of particulars and to suppress evidence which were denied, a plea of not guilty was entered. The case should then have been tried without further form or ceremony. . . . The matters set forth in the [special] plea were mere matters of defense determinable under the general issue [plea of not guilty]. Federal criminal procedure is governed not by state practice but by federal statutes and decisions of the federal courts. [Citing cases.] Neither requires such piecemeal consideration of a case. *A special plea in bar is appropriate where defendant claims former acquittal, former conviction or pardon, . . . but there is no warrant for its use to single out for determination in advance of trial matters of defense either on questions of law or fact.* That such a practice is inconsistent with prompt and effective administration of the law and is likely to result in numerous hearings, waste of courts' time and unnecessary delays is well illustrated by the record in this case."

An information which charges an offense in the language of a statute which is unconstitutional states no offense and the defect is jurisdictional. *Servonitz v. State* (1907), 133 Wis. 231, 113 N. W. 277.

The sufficiency of an indictment or information is subject to a motion to quash, and the question is properly raised in that manner. *State v. Kitzerow* (1936), 221 Wis. 436, 267 N. W. 71. We shall content ourselves by referring to sources stating the law with reference to the interposition of pleas in abatement and special pleas in bar. See 22 C. J. S., Criminal Law, p. 661, sec. 427, pleas in abatement *et seq.,* and p. 681, sec. 436, special pleas in bar *et seq.* See cases cited, note 51.

Designating the plea as a plea in bar does not determine its character. What the pleading filed did was to raise the ques-

tion of the validity of the statute upon which the information was based. Upon that question it was not necessary or proper to take evidence, and the question should have been raised under our statute by demurrer or the general practice by motion to quash. If the statute is generally constitutional and for some circumstance peculiar to the situation of the defendant is unconstitutional, that is a matter which is properly triable under the general issue or a plea of not guilty. The question raised in this case having been thoroughly argued and fully presented to the court we shall treat the matter as if the information had been demurred to. The affidavits and evidence introduced will be regarded as surplusage, because they are not properly before the court.

Sec. 348.412, Stats. 1945, provides as follows:

"Any person who shall publish or cause to be published in any newspaper, magazine, periodical or circular, except as the same may be necessary in the institution or prosecution of any civil or criminal court proceeding, or in the compilation of the records pertaining thereto, the identity of a female who may have been raped or subjected to any similar criminal assault, shall be punished by imprisonment in the county jail for not more than one year or by fine not exceeding five hundred dollars, or by both such fine and imprisonment."

Sec. 348.412, Stats., was enacted by ch. 201, Laws of 1925. The words "Press not to print name of rape victim" found as a head to sec. 348.412 of the statutes were no part of ch. 201, Laws of 1925, and are no part of the statute, (sec. 370.01 (48)).

The questions involved upon this review are stated by the plaintiff as follows:

1. Is sec. 348.412, Stats., a valid exercise of the police power as against the contention that it violates constitutional guaranties of the freedom of the press?
2. Is sec. 348.412 sufficiently definite and certain as not to constitute a denial of due process of law?

3. Does sec. 348.412 contain unwarranted classification constituting a denial of the equal protection of the laws, contrary to the provisions of the Wisconsin constitution and the constitution of the United States?

First we shall deal with the contention of the defendant to the effect that sec. 348.412, Stats., is so vague, uncertain, and indefinite that it constitutes a denial of due process of law, contrary to the provisions of the state and federal constitutions. The last word of the supreme court of the United States upon this difficult and technical subject is to be found in *Winters v. New York,* decided March 29, 1948, and reported in 333 U. S. 507, 512, 514, 68 Sup. Ct. 665, 92 L. Ed. 000. While the facts in that case differ from the facts involved in the case before us the principles which govern both cases are the same. That case holds, as stated in the syllabus as follows:

"A state statute making it an offense to print, publish or distribute, or to possess with intent to distribute, any printed matter principally made up of criminal news, police reports or accounts of criminal deeds, or pictures, or stories of deeds of bloodshed, lust or crime, construed by the state courts as prohibiting such massing of accounts of deeds of bloodshed and lust as to incite to crimes against the person, does not define the prohibited acts in such a way as to exclude those which are a legitimate exercise of the constitutional freedom of the press and therefore infringes on such constitutional right." (L. Ed. syllabus.)

The court held:

"On its face, the subsection here involved violates the rule of the *Stromberg Case* [283 U. S. 359, and other cases], that statutes which include prohibitions of acts fairly within the protection of a free press are void. It covers detective stories, treatises on crime, reports of battle carnage, *et cetera.* In recognition of this obvious defect, the New York court of appeals limited the scope by construction. Its only interpretation of the meaning of the pertinent subsection is that given in this case." (333 U. S. 507, 512.)

After discussing at some length the decision of the New York court of appeals, the court said:

"The court of appeals by this authoritative interpretation made the subsection applicable to publications that, besides meeting the other particulars of the statute, so massed their collection of pictures and stories of bloodshed and of lust 'as to become vehicles for inciting violent and depraved crimes against the person.' Thus, the statute forbids the massing of stories of bloodshed and lust in such a way as to incite to crime against the person. This construction fixes the meaning of the statute for this case. The interpretation by the court of appeals puts these words in the statute as definitely as if it had been so amended by the legislature. . . . When a legislative body concludes that the mores of the community call for an extension of the impermissible limits, an enactment aimed at the evil is plainly within its power, if it does not transgress the boundaries fixed by the constitution for freedom of expression. The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcment. The crime 'must be defined with appropriate definiteness' [citing cases]. There must be ascertainable standards of guilt. Men of common intelligence cannot be required to guess at the meaning of the enactment. The vagueness may be from uncertainty in regard to persons within the scope of the act [citing], or in regard to the applicable tests to ascertain guilt." (333 U. S. 507, 514.)

Does sec. 348.412, Stats., meet these tests? We first consider the object of the statute. It was no doubt intended to save from embarrassment and offensive publicity women who have been the subject of the kind of assault delineated in the statute, and to aid law-enforcement officers to more readily obtain evidence for the prosecution of such criminal offenses. It is considered that it is a matter of common knowledge that such victims suffer far beyond anything suffered by men or women in connection with other classes of crimes. It was to prevent this and aid prosecuting officers that the legislature of this and nineteen other states have enacted laws of this general character.

Whether sec. 348.412, Stats., meets the test depends very largely upon the meaning to be attributed to the word "identity." The word "identity" is not a word of art in the law. "Identity" is a noun and from it the adjective "identical" is derived. Things are said to be identical when they are the same, equivalent, equal. To identify is to establish the identity of; to prove the same with something described, claimed, or asserted. Identity is defined as sameness of essential or generic character in different examples or instances; the limit approached by increasing similarity; sameness in all that constitutes the objective reality of a thing. (Webster.) With respect to persons the most common means of identifying them is by name, but that is by no means the only method which is employed. Any knowledge or information which enables the recipient to distinguish the person referred to affords a means of identification. What the statute was clearly intended to do was to prevent the publication of information respecting the victim of an assault such as that described in the section and thus to save her embarrassment, offensive publicity, and aid in the punishment of the offender. It is not necessary to set out the article published by the defendant in the Capital Times so far as this branch of the case is concerned. If sec. 348.412 is sufficiently definite and certain and does not offend the constitution of the state of Wisconsin or of the United States the demurrer should be overruled and the information held good.

It is clear that the section prohibits the publication of the name of the victim, and in this case the name was published. It is also clear that it prohibits the publication of information which of itself or by reference furnishes the means of identification. In *Winters v. New York, supra,* it was clearly indicated that if the statute had been limited to certain prescribed publications that it would have been held valid, but because it embraced a prohibition against a publication of other matters or the sale of books containing other material the statute as a whole was invalid.

In this case we deal with but one offense, the publication of the identity of the female involved. For that reason sec. 348.412, Stats., does not fall in the same category as did the New York statute. That dealt with a combination of acts, some of which were proper matters to publish or distribute, while sec. 348.412 deals with a single act.

This leaves for decision the question whether the statute describes the offense with sufficient definiteness. In a criminal statute there must be ascertainable standards of guilt. Men of common intelligence cannot be required to guess at the meaning of the enactment. The vagueness may be from uncertainty in regard to persons within the scope of the act or in regard to the applicable tests to ascertain guilt. *Winters v. New York, supra,* 333 U. S. 507, 515, and cases cited. The precise question is, do the words "publish the identity of a female" have a definite readily ascertainable meaning? Having in mind the purpose of the statute it is considered that these words mean that the name or other means of ready identification of the female shall not be published. If from the facts published a reader of ordinary intelligence and experience may readily distinguish the female involved from all other persons, then her identity is published.

Upon this point it is considered that this case was ruled by *Nash v. United States,* 229 U. S. 373, 376, 33 Sup. Ct. 780, 57 L. Ed. 1232. Mr. Justice HOLMES, speaking for the court, said (referring to cases cited) :

"Those cases may be taken to have established that only such contracts and combinations are within the act as, by reason of intent or the inherent nature of the contemplated acts, prejudice the public interests by unduly restricting competition or unduly obstructing the course of trade. 221 U. S. 179. And thereupon it is said that the crime thus defined by the statute contains in its definition an element of degree as to which estimates may differ, with the result that a man might find himself in prison because his honest judgment did not anticipate that of a jury of less competent men. The kindred

proposition that 'the criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty,' is cited from the late Mr. Justice BREWER, sitting in the circuit court. *Tozer v. United States,* 52 Fed. 917, 919.

"But apart from the common law as to restraint of trade thus taken up by the statute the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree.    If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death. 'An act causing death may be murder, manslaughter, or mis-adventure according to the degree of danger attending it' by common experience in the circumstances known to the actor. 'The very meaning of the fiction of implied malice in such cases at common law was, that a man might have to answer with his life for consequences which he neither intended nor foresaw' [citing cases].    'The criterion in such cases is to examine whether common social duty would, under the cir-cumstances, have suggested a more circumspect conduct. . . .' If a man should kill another by driving an automobile furiously into a crowd he might be convicted of murder however little he expected the result. . . . If he did no more than drive negli-gently through a street he might get off with manslaughter or less [citing].    And in the last case he might be held although he himself thought that he was acting as a prudent man should. . . . We are of the opinion that there is no constitutional dif-ficulty in the way of enforcing the criminal part of the act."

In *United States v. Wurzbach,* 280 U. S. 396, 399, 50 Sup. Ct. 167, 74 L. Ed. 580, in considering the language of the Federal Corrupt Practices Act, Mr. Justice HOLMES, speaking for the court said :

"It is argued at some length that the statute, if extended be-yond the political purposes under the control of congress, is too vague to be valid.    The objection to uncertainty concerning the persons embraced need not trouble us now.    There is no doubt that the words include representatives, and if there is any difficulty, which we are far from intimating, it will be time enough to consider it when raised by someone whom it con-

cerns. The other objection is to the meaning of 'political purposes.' This would be open even if we accepted the limitations that would make the law satisfactory to the respondent's counsel. But we imagine that no one not in search of trouble would feel any. Whenever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so it is familiar to the criminal law to make him take the risk."

It is not violative of due process of law for a legislature in framing its criminal law to cast upon the public the duty of care and even of caution, provided that there is sufficient warning to one bent on obedience, that he comes near the proscribed area. *Nash v. United States, supra; International Harvester Co. v. Kentucky,* 234 U. S. 216, 34 Sup. Ct. 853, 58 L. Ed. 1284.

The words "the identity of a female" are certainly more definite and certain than the words "political purposes." We reach the conclusion that sec. 348.412, Stats., does not operate to deprive the defendant of due process by reason of vagueness and uncertainty. *State v. Arnold* (1935), 217 Wis. 340, 258 N. W. 843, and cases cited.

On behalf of the defendant it is argued that there is no clear and present danger which would justify the legislature in prescribing this limitation on the freedom of the press. The discussion of this contention involves a consideration of matters relating to public policy. These matters are primarily for the legislature and it is not the office of this or any other court to set aside a legislative enactment unless it clearly contravenes some constitutional provision. Whether there is a "clear and present danger" warranting the enactment of the statute is for the legislature.

The proposition advanced comes down to this : That the protection of a female victim under the circumstances described in sec. 348.412, Stats., is not of sufficient importance to justify restrictive legislation affecting the constitutional right of the

press because there is no clear and present danger. The following cases are cited in support of this contention: *Herndon v. Lowry,* 301 U. S. 242, 57 Sup. Ct. 732, 81 L. Ed. 1066, and *Thomas v. Collins,* 323 U. S. 516, 530, 65 Sup. Ct. 315, 89 L. Ed. 430, where it was said:

"For these reasons any attempt to restrict those liberties must be justified by clear public interest, threatened not doubtfully or remotely, but by clear and present danger. The rational connection between the remedy provided and the evil to be curbed, which in other contexts might support legislation against attack on due process grounds, will not suffice. These rights rest on firmer foundation. Accordingly, whatever occasion would restrain orderly discussion and persuasion, at appropriate time and place, must have clear support in public danger, actual or impending. Only the gravest abuses, endangering paramount interests, give occasion for permissible limitation."

In *Chaplinsky v. New Hampshire* (1942), 315 U. S. 568, 62 Sup. Ct. 766, 86 L. Ed. 1031, the supreme court of the United States had under consideration sec. 2, ch. 378, Public Laws of New Hampshire, which provided as follows (p.569):

"No person shall address any offensive, derisive or annoying word to any other person who is lawfully in any street or other public place, nor call him by any offensive or derisive name, nor make any noise or exclamation in his presence and hearing with intent to deride, offend or annoy him, or to prevent him from pursuing his lawful business or occupation."

The accused contended that the statute violated his constitutional right to freedom of speech. The court said (p. 571):

"Allowing the broadest scope to the language and purpose of the Fourteenth amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any constitutional prob-

lem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."

The supreme court of the United States held the law valid. It is considered that sec. 348.412, Stats., falls in the same category as the New Hampshire law.

As has already been stated, this statute is intended to protect the victim from embarrassment and offensive publicity which no doubt have a strong tendency to affect her future standing in society. In addition to that it is a well-known fact that many crimes of the character described go unpunished because the victim of the assault is unwilling to face the publicity which would follow prosecution. The feelings of a female under such circumstances can easily be imagined but they are difficult to describe. It is a matter of common knowledge that many people go to great lengths to keep their names out of the paper with regard to the violation of a parking ordinance. The desire for no publicity in a case such as the statute deals with must be multiplied and for much better reasons must be many times that of the violator of a parking ordinance.

It is considered that there is a minimum of social value in the publication of the identity of a female in connection with such an outrage. Certain it is that the legislature could so find. At most the publication of the identity of the female ministers to a morbid desire to connect the details of one of the most detestable crimes known to the law with the identity of the victim. When the situation of the victim of the assault and the handicap prosecuting officers labor under in such cases are weighed against the benefit of publishing the identity of the victim in connection with the details of the crime, there can be

no doubt that the slight restriction of the freedom of the press prescribed by sec. 348.412, Stats., is fully justified.

We find no ground upon which sec. 348.412, Stats., may be held invalid.

*By the Court.*—The order is reversed, and the cause remanded to the court for further proceedings according to law.

MARTIN, J., took no part.