17234

TROYCE BRINDEL MEETZE, by her Guardian *ad litem,* Harvey
Golden, Appellant, v. THE ASSOCIATED PRESS, Respondent,
LEWIE HERMAN MEETZE, by his Guardian *ad litem,* Harvey
Golden, Appellant, v. The ASSOCIATED PRESS, Respondent.

(95 S. E. (2d) 606)

*Messrs. Kale R. Alexander* and *Charles D. Davis,* of Columbia, *for Appellant,*

332

*Messrs. John H. Lumpkin* and *Boyd, Bruton & Lumpkin,* of Columbia, and *J. B. S. Lyles,* of Columbia, *of Counsel, for Respondent,*

December 11, 1956.

OXNER, Justice.

These are actions to recover damages for invasion of the right of privacy. The appeal in each case is from an order sustaining a demurrer to the complaint. Both appeals involve the same legal question and were argued together.

Plaintiffs Troyce Brindel Meetze and Lewie Herman Meetze are approximately 12 and 20 years of age, respectively. They were married on March 13, 1955. On March 13, 1956, a son was born to this couple at a hospital in Columbia. Two days later the Associated Press caused to be published in The State, a Columbia newspaper, the following article:

"A chubby, blonde 12-year-old-mother of a day-old healthy baby boy greeted visitors cheerfully yesterday, but declined to have her picture taken or talk generally with reporters.

"Her young husband, Lewis Herman Meetze, a West Columbia construction company worker whose age could not be learned, also declined to see newsmen or let his wife talk with outsiders after an Associated Press reporter talked to her briefly.

"Mrs. Meetze, in the brief visit she granted the news service reporter, was cheerful but uncommunicative.

"She had just concluded a nursing visit from her young son. At her orders, the baby was placed in the obstetrical ward nursery at a point where he cannot be seen by outsiders through the viewing window.

"Occupying a choice private room, she would say only that she had read The State lying on her bed.

" 'I just don't want any publicity,' she said pleasantly. She agreed to reconsider the matter in a later talk with her husband, but both stood by her original decision, hospital attendants said.

"The hospital said the six pound, 14-ounce baby was 'fine and healthy.' He was seen as he was carried by a nurse from the room to the nursery and his appearance bore out the hospital judgment.

"Mrs. Meetze's family—her father is listed as Oliver Brindeis from Georgia, but from what place could not be learned."

In both the complaint by Mrs. Meetze and that by her husband it was alleged that the Associated Press, despite the wishes and requests of the plaintiff, spitefully and maliciously caused said article to be published not only in the Columbia State but in numerous other newspapers and thereby exposed the plaintiff "to an unwanted public light" and "public gaze", and made the plaintiff "an object of scorn and ridicule" because of the youth of the mother at the time of the birth of the child. It was further alleged in each complaint that the plaintiff suffered "extreme embarrassment, humiliation, mental anguish, mental agony, wounded feelings and loss of privacy."

Two questions are presented: (1) May an action be maintained in South Carolina for violation of what has been termed as the right of privacy? (2) If so, does the complaint state such a cause of action? The Court below did not pass. on the first question but held that even if recognition be given to the doctrine of right of privacy, the allegations of the complaint were insufficient to state such a cause of action. In the determination of these issues, we have been greatly aided by the excellent briefs of counsel.

The "right of privacy" has been defined as the right of an individual to be let alone, to live a life of seclusion, to be free from unwarranted publicity. 77 C. J. S., Right of Privacy, § 1; 41 Am. Jur., Privacy, Section 2. The following has been suggested as a fairly comprehensive definition of what constitutes an actionable invasion of the right of privacy: "The unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." 41 Am. Jur., Privacy, Section 2; Continental Optical Co. v. Reed, 119 Ind. App. 643, 86 N. E. (2d) 306, 14 A. L. R. (2d) 743; Smith v. Doss, 251 Ala. 250, 37 So. (2d) 118. The existence of a legal right of privacy is recognized by the American Law Institute in the following language: "A person who unreasonably and seriously interferes with another's interests in not having his affairs. known to others or his likeness exhibited to the public is liable to the other." 4 Restatement, Torts, Section 867.

The right is distinct in and of itself and not merely incidental to some other recognized right for breach. of which an action for damages will lie. Fairfield v. American Photocopy Equipment Co., 138 Cal. App. (2d) 82, 291 P. (2d) 194. A violation of the right of privacy is a tort. Truth is not a defense to an action of this kind. 41 Am. Jur., page 935.

The pioneers in the enunciation of the doctrine of right of privacy were Samuel D. Warren and Louis D. Brandeis (later Justice Brandeis) who published an article in 1890 entitled, "The Right to Privacy." 4 Harvard Law Review 193. It was there defined as an independent right and the distinctive principles upon which it is based were formulated. Later the doctrine was advocated by numerous other writers and statutes relating to it were adopted in several States. The first appellate court to recognize the doctrine was the Supreme Court of Georgia. *Pavesich v. New England Life Insurance Co.*, 122 Ga. 190, 50 S. E. 68, 69 L. R. A. 101, decided in 1905. That decision has been followed by most of the courts of this country. In fact, the doctrine has been rejected in only four or five jurisdictions.

We think this Court in *Holloman v. Life Insurance Co. of Virginia*, 192 S. C. 454, 7 S. E. (2d) 169, 171, 127 A. L. R. 110, clearly aligned itself with those jurisdictions recognizing the existence of a right of privacy. It was there stated: "The right of privacy is one which was not definitely recognized by the law until comparatively recent times. But we find ourselves in agreement with a number of authorities to the effect that the violation of such a right is under certain circumstances a tort which would entitle the injured person to recover damages."

Excellent annotations on the subject will be found in 138 A. L. R. 22, 168 A. L. R. 446, and 14 A. L. R. (2d) 750.

Having concluded that an action for interference with right of privacy may be maintained in this jurisdiction, the question remains as to whether or not the allegations of the complaint are sufficient to constitute an unwarranted invasion of such right.

The right of privacy is not an absolute right. Some limitations are essential for the protection of the right of freedom of speech and of the press and the interests of the public in having a free dissemination of news and information. None of these rights are without qualification.

Courts have encountered considerable difficulty in seeking to balance these conflicting interests. In almost every case involving assertion of a right of privacy, the court is called upon to resolve a conflict between the rights of the individual on the one hand and the interests of society on the other.

One of the primary limitations placed on the right ██ of privacy is that it does not prohibit the publication of matter which is of legitimate public or general interest. "At some point, the public interest in obtaining information becomes dominant over the individual's desire for privacy. It has been said that the truth may be spoken, written, or printed about all matters of a public nature, as well as matters of a private nature in which the public has a legitimate interest. However, the phrase 'public or general interest', in this connection does not mean mere curiosity." 41 Am. Jur., Privacy, Section 14. And we may add that newsworthiness is not necessarily the test. As stated in *Sidis v. F-R Publishing Corp.*, 2 Cir., 113 F. (2d) 806, 809, 138 A. L. R. 15, "Revelations may be so intimate and so unwarranted in view of the victim's position as to outrage the community's notions of decency."

A person may by his acts, achievements or mode of ██ life become a public character and lose to some extent the right of privacy that otherwise would be his. There are times when one, whether willingly or not, becomes an actor in an occurrence of public or general interest. When this takes place, he emerges from his seclusion and the publication of his connection with such occurrence is not an invasion of his right of privacy. *Jones v. Herald Post Co.,* 230 Ky. 227, 18 S. W. (2d) 972; *Berg v. Minneapolis Star & Tribune Co.*, D. C. Minn., 79 F. Supp. 957; *Abernathy v. Thornton*, 263 Ala. 496, 83 So. (2d) 235; 77 C. J. S., Right of Privacy, § 3, p. 402. The law does not recognize a right of privacy in connection with that which is inherently a public matter.

It is equally well settled that the right of privacy ██ protects only the ordinary sensibilities of an individual and not supersensitiveness. In 41 Am. Jur.,

Privacy, Section 12, it is said: "The right of privacy is relative to the customs of the time and place, and it is determined by the norm of the ordinary man. The protection afforded by the law to this right must be restricted to 'ordinary sensibilities', and cannot extend to supersensitiveness or agoraphobia. In order to constitute an invasion of the right of privacy, an act must be of such a nature as a reasonable man can see might and probably would cause mental distress and injury to anyone possessed of ordinary feelings and intelligence, situated in like circumstances as the complainant; and this question is to some extent one of law."

After careful consideration of the allegations of the complaint in the light of the foregoing principles, we are constrained to hold that the facts in this article do not show an unwarranted invasion of the right of privacy. It is rather unusual for a twelve year old girl to give birth to a child. It is a biological occurrence which would naturally excite public interest. Moreover, it was an event which the law required to be entered as a public record. See Section 18 of the Rules and Regulations promulgated by the State Board of Health relating to birth certificates, Volume 7, pages 683 and 684 of the 1952 Code. This regulation requires that the ages of both the mother and the father be stated. It is argued that this article was published approximately three weeks before the birth certificate was filed. But we think this is of little significance. In *Metter v. Los Angeles Examiner*, 35 Cal. App. (2d) 304, 95 P. (2d) 491, 495, the Court said: "Manifestly an individual cannot claim a right to privacy with regard to that which cannot, from the very nature of things and by operation of law, remain private."

There is perhaps another reason why the facts do not show a wrongful invasion of the right of privacy. It would be going pretty far to say that the article complained of was reasonably calculated to embarrass or humiliate the plaintiffs or cause mental distress. Although Mrs. Meetze was only eleven years old when she married, the marriage was not void. *State v. Sellers*, 140 S. C. 66, 134 S. E. 873.

The fact that plaintiffs charged actual malice in the publication does not, as their counsel seem to think, have any material bearing on the question. A publication which otherwise does not violate the right of privacy is not rendered violative of such right because it was made maliciously. 77 C. J. S., Right of Privacy, § 2, p. 400. In *Sidis v. F-R Publishing Corporation, supra,* 113 F. (2d) 806, 809, 138 A. L. R. 15, the Court said: "If plaintiff's right of privacy was not invaded by the article, the existence of actual malice in its publication would not change that result."

The only other question raised by the exceptions is the contention of the plaintiffs that in settling the case for appeal, the Court erred in excluding from the record a photostatic copy of the birth certificate of this child. We find no error. In passing on a demurrer, the Court is confined to the facts appearing on the face of the complaint. Moreover, the ruling of the Court below was not prejudicial. A consideration of the facts stated in the certificate, which are those required by Rule 18 of the State Board of Health heretofore referred to, would not lead to a different result.

In conclusion, we desire to say that there is some justification for the complaint made by plaintiffs as to the conduct of this newspaper reporter. He visited the mother's room on the day following the birth of the child. It would seem he could have waited a reasonable time before seeking to interview her. He was obviously an unwelcome visitor and a source of great annoyance. We regret that we cannot give legal recognition to Mrs. Meetze's desire to avoid publicity but the courts do not sit as censors of the manners of the Press.

The order sustaining the demurrer in each case is affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.