Patricia A. NAPPIER and S. Maxine Gunter, Appellants,

v.

JEFFERSON STANDARD LIFE INSURANCE COMPANY and Jefferson Standard Broadcasting Company, a subsidiary of Jefferson Standard Life Insurance Company, Appellees.

No. 8946.

United States Court of Appeals Fourth Circuit.

Argued June 5, 1963.

Decided Sept. 12, 1963.

Yancey A. McLeod and Harry M. Lightsey, Jr., Columbia, S. C. (McLeod & Singletary, Columbia, S. C., on brief), for appellants.

Robert H. Koonts, Greensboro, N. C., and P. H. McEachin, Florence, S. C. (McEachin, Townsend & Zeigler, Florence, S. C., on brief), for appellees.

Before BRYAN and BELL, Circuit Judges, and BARKSDALE, District Judge.

ALBERT V. BRYAN, Circuit Judge.

Their right of privacy was violated, Patricia Nappier and Maxine Gunter charged in separate complaints, by the Jefferson Standard Life Insurance Company and by its subsidiary the Jefferson Standard Broadcasting Company when the latter published through television the fact of their rape. On motion the District Court dismissed the complaints. In this it denied the plaintiffs' contention that in South Carolina, where the television was projected, a cause of action was assured them both by the following statutory provision and by the common law:

> "Misdemeanor to publish name of person raped, etc.—Whoever publishes or causes to be published the name of any woman, maid or woman child upon whom the crime of rape or an assault with intent to ravish has been committed or alleged to have been committed in this State in any newspaper, magazine or other publication shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine

of not more than one thousand dollars or imprisonment of not more than three years. But the provisions of this section shall not apply to publications made by order of court." § 16–81 Code of Laws of South Carolina, 1962.

The motion argued that the actual name of neither girl—as is true—was mentioned in the pictures or narrative, that the report was a matter of public interest and record, and so no cause of action for breach of privacy could be rested either upon the statute or on the common law. We disagree. "Name", we hold in the context of this case, is to be read in the statute as the equivalent of "identity". Since the broadcast, as pleaded, sufficiently identified the victims other than by name, it transgressed the statute and trespassed on the plaintiffs' privilege of privacy. Recital of the antecedent circumstances and the content of the televisions, as alleged in the complaints, makes this manifest.

These young women were employed by the Dental Division of the South Carolina Department of Health to teach dental hygiene in the public schools. In this work they adopted a puppet play, the puppet commonly known as "Little Jack". Throughout the State they were therefore spoken of as "The Little Jack Girls". A station wagon was furnished them by the State on each side of which was prominently lettered "Little Jack, Dental Division, South Carolina State Department of Health". At a motel on the night of November 27, 1961 in Kingstree, South Carolina, where they were to appear the next day in the county schools, each of them was criminally assaulted. The assailant also stole the station wagon. It was found abandoned near Florence, South Carolina.

On the following morning Standard's reporters took pictures of the automobile and reproduced them in the early evening and again at 11 o'clock P.M. from their Station WBTW. In both programs the vehicle was shown, and clearly visible upon each side of it were the words

"Little Jack, Dental Division, South Carolina State Department of Health". The license number of the wagon was also to be seen. Additionally, the announcer described the vehicle as that used by the two young women who had been attacked in Kingstree.

Further allegations of the complaints admitted by the motion to dismiss are that WBTW has a broad coverage throughout South Carolina, that as a result of the exhibits plaintiffs became generally known in the State as the victims of the crime, and that knowledge of their experience was thus carried to their friends as well as to others, all to the embarrassment and humiliation of the plaintiffs.

■ The meaning of the term "name" cannot be given the narrow import ascribed it by Standard without impairing the purpose of the statute. Aside from the personal protection of the woman involved, the object of this law, concededly, is to encourage a free report of the crime by the victim. Cf. State v. Evjue, 253 Wis. 146, 33 N.W.2d 305, 13 A.L.R.2d 1201 (1948). Fear of publicity might deter her from notifying the police. Thus the public interest is advanced by the statute: the crime is investigated promptly and the injured person is shielded.

These aims could not be fully achieved if only disclosure of one's proper name was forbidden. Publication of a description of the woman by identifying her through circumstances would in effect name her. After all, a name is but a designation, and a description is frequently a more positive identification than a name. State ex rel. Lane v. Corneli, 347 Mo. 932, 149 S.W.2d 815 (1941). We recognize faces, or know persons by reputation, when we do not know them by name. Cf. Peck v. Tribune Co., 214 U.S. 185, 189, 29 S.Ct. 554, 53 L.Ed. 960 (1909). An episode can be more revealing than a family name, a sobriquet than a surname.

■ In South Carolina the penal aspect of the statute does not require an interpretation so rigid as to strip its wording of its plain connotation. Carolina Amusement Co. v. Martin, 236 S.C. 558, 115 S.E.2d 273 (1960), cert. denied, 367 U.S. 904, 81 S.Ct. 1914, 6 L.Ed.2d 1248 (1961); State v. Firemen's Ins. Co., 164 S.C. 313, 162 S.E. 334 (1931). This is certainly sound construction when, as here, the statute is only employed to provide civil redress. McKenzie v. Peoples Baking Co., 205 S.C. 149, 31 S.E.2d 154 (1944).

The Legislature could, of course, have used "identity" instead of "name", or put both in the statute, as do the laws of other States. E. g. Wisconsin Statutes of 1945, § 348.412, as quoted in the Evjue case, supra, 253 Wis. 146, 33 N.W. 2d 305; Florida Statutes, § 794.03; Georgia Code, § 26–2105. But "name" alone in the environment of the policy evidenced by the South Carolina statute is sufficient to comprehend "identity". That a description serves the purpose of a name is amply demonstrated in defamation cases. A libelee is nonetheless libeled though his name be not mentioned. Peck v. Tribune Co., supra, 214 U.S. 185, 29 S.Ct. 554, 53 L.Ed. 960 (1909); Nash v. Sharper, 229 S.C. 451, 93 S.E.2d 457, 459 (1956); Prosser, Torts 583 (1955).

No support for Standard's position is found in decisions upon a statute prohibiting the unauthorized use of a personal name, portrait or picture in advertising. E. g.: Gardella v. Log Cabin Products Co., 89 F.2d 891 (2 Cir., 1937); Levey v. Warner Bros. Pictures, Inc., 57 F.Supp. 40 (S.D.N.Y.1944). For advertising, only the name, pseudonym or picture of the person—usually because of his prominence—is significant. Any other description is of no value. Consequently, the object of the law is not impinged unless the publication embodies the name, portrait or picture. That is not so in the statute now in review.

To repeat, we think the allegations of the complaints adequately demonstrate that the television in effect divulged the names of the two women. Thus each states a cause of action for intrusion

upon privacy. South Carolina recognizes the right of privacy and affords a cause of action for an infringement. In Meetze v. Associated Press, 230 S.C. 330, 95 S.E.2d 606, 608, 609 (1956), the Court said:

> " \* \* \* The following has been suggested as a fairly comprehensive definition of what constitutes an actionable invasion of the right of privacy: 'The unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.'
>
> \* \* \* \* \* \*
>
> " 'The right of privacy is one which was not definitely recognized by the law until comparatively recent times. But we find ourselves in agreement with a number of authorities to the effect that the violation of such a right is under certain circumstances a tort which would entitle the injured person to recover damages.' "

While the plaintiffs have premised their suits, first, upon the breach of the statute and, second, upon the common law, there is no necessity to determine whether an action may be pitched solely on the statute, for it is clear the plaintiffs may sue under the common law as fortified by the statute.

█ Standard counters that the incident was a matter of public concern and record and so is exempted from the rule of privacy. Jenkins v. Dell Publishing Co., 251 F.2d 447 (3 Cir.), cert. denied, 357 U.S. 921, 78 S.Ct. 1362, 2 L.Ed.2d 1365 (1958); Frith v. Associated Press, 176 F.Supp. 671, 674 (E.D.S.C.1959); Meetze v. Associated Press, supra, 230 S.C. 330, 95 S.E.2d 606, 609 (1956); Prosser, Torts 643–44 (1955). The ready replication is that the statute states an exception to the exemption. No matter the news value, South Carolina has unequivocally declared the identity of the injured person shall not be made known in press or broadcast. Cf. State v. Evjue, supra, 253 Wis. 146, 33 N.W.2d 305. No constitutional infringement has been suggested. Indeed, Standard conceded in oral argument that if the broadcast did in fact and in law "name" the plaintiffs, then they had a right of action.

Dismissal of the complaints was error and the order must be set aside, the actions remanded for trial. Whether or not the defendants did in fact "name" the plaintiffs will then be an issue to be settled by the court or jury. On this point we intimate no view.

Reversed and remanded.

BARKSDALE, District Judge (dissenting).

With due deference to the views of the majority so ably expressed in Judge Bryan's opinion, I find myself unable to agree with the majority opinion, and therefore I dissent.

Although no information as to the legislative history of the South Carolina statute here involved (Section 16–81, Code of Laws of South Carolina 1962) appears in the record, I am willing to concede that the apparent objects of the Act were the "personal protection of the woman involved", and "to encourage a free report of the crime by the victim". But I cannot agree that in a statutory inhibition of publication of the "name of the victim", "name" is equivalent to "identity": "identity" is a much broader term than "name". If the South Carolina Legislature had intended by its statute to proscribe the publication of information from which "identity" could be determined, it could quite readily have said so, as does the Wisconsin statute.

The common law right of privacy exists in South Carolina, and an unwarranted invasion of this right is tortious and actionable, but it is not an absolute right, and where the alleged invasion of privacy is the publication of matter of public concern and record, it is not tortious nor

actionable. Meetze v. Associated Press, 230 S.C. 330, 95 S.E.2d 606.

The majority take the view that "the plaintiffs may sue under the common law as fortified by the statute". It seems clear to me that plaintiffs have no cause of action at common law, because the published matter came within the well recognized exceptions to the right of privacy, and that even a liberal construction does not justify the court in equating "name" with "identity".

I would affirm the judgment of the District Court.