Joseph E. JOHNSON, III, Judge of the Fayette County Court, Appellant,

v.

W. Wood SIMPSON et al., Appellees.

Court of Appeals of Kentucky.

Nov. 1, 1968.

---

Armand Angelucci, Fayette County Atty., Lexington, for appellant.

C. Gibson Downing, Lexington, for appellees.

OSBORNE, Judge.

This appeal involves the right of appellant, County Judge of Fayette County, to exclude members of the press from trials in what is referred to as the "adult branch" of juvenile court held under KRS 208.020(3) and from juvenile sessions of the county court held under KRS 208.060. The question reaches this court by way of an appeal taken by the county judge from an order of the Fayette Circuit Court in a mandamus proceeding against him prohibiting him from excluding members of the local press from trials involving juveniles at which other members of the public, including other members of the press, were permitted to be present. The facts giving rise to the controversy are not in dispute and are precisely set out by the circuit judge in, what we consider to be, an excellent memorandum and opinion.

On September 20, 1967, a trial commissioner appointed by the judge in the "adult juvenile" division of the court directed reporters for the appellee newspaper not to publish the names of certain witnesses who were juveniles. The Lexington Herald, in violation of this directive, published the names. On September 26, 1967, appellant announced in a meeting of the Fayette County Fiscal Court that thereafter the reporters of this paper would be barred from all future sessions of the juvenile court and the "adult juvenile" sessions of the court. On September 27, 1967, appellees Simpson and Bacon were physically barred from both courts by members of the Fayette County Police Department under the directive of appellant.

Several questions are raised in this appeal. Does KRS 208.060 providing that in the hearings in "All cases involving children * * * the general public shall be excluded * * *" apply to hearings of adults for contributing to the delinquency of minors held by the juvenile court pursuant to KRS 208.020(3)? In the absence of any statutory provision may a juvenile judge condition a reporter's presence at the trial of an adult for contributing to the delinquency of minors upon his agreeing to not publish the names of the children involved unless the judge allows him to? Can a juvenile judge open the hearings in juvenile cases to reporters only on the condition that they not publish the names of children unless the judge gives specific permission, and then exclude reporters who violate these terms while allowing others to remain?

In answer to the first question it is the opinion of this court that this provision does not apply to the trial of adults. A close reading of the statute does not clearly indicate that it does not. However, this court under a very similar previous statute held that it did not apply to adults. Beauchamp v. Cahill, 297 Ky. 505, 180 S.W.2d 423. The court in that case relied on a Washington decision interpreting their statute which is practically identical to our present statute. State v. Marsh, 126 Wash. 142, 217 P. 705 (1923). As the Marsh case points out, the other interpretation would lead to constitutional questions. Corpus Juris says in this respect, 43 C.J.S. Infants § 16, p. 73, "Pros-

ecutions for violations of the laws for the protection of children are criminal in nature and should be conducted in the same manner as other criminal prosecutions; and statutes denying defendant under these prosecutions the right to trial as for any other crime have been declared unconstitutional." In light of this settled law, we do not believe that the legislature intended this statute to apply to the trial of adults.

■ On the second question, petitioner insists that the court has the inherent right to conduct its affairs in any manner that it deems fit in its discretion controlled only by what will serve the cause of justice. With this we disagree. The principle that justice can not survive behind walls of silence is so deeply imbedded in our Anglo-American judicial system as to give our people in today's modern society a deep distrust of secret trials. In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682. One of the strongest demands of a democratic system is that the public should know what goes on in their courts. This demand can only be met by permitting them to be present in person and by permitting the press who have the facilities to properly inform them to be present upon their behalf. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600; State of Maryland v. Baltimore Radio Show, 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562. It is insisted by some the right to public trial is solely for the benefit of the criminal defendant and if he has no objection to a closed trial then the public should not be permitted to object. This contention overlooks the fact that the public is a party to all criminal proceedings. The proceeding is prosecuted in the name of the public. In our opinion there is nothing that better protects the rights of the public than their presence in proceedings where these rights are on trial. The news media should be accorded some priority in this respect for they have the facilities to disseminate the information of what transpires to a much broader audience than those who can gather in a crowded court room.

■ This proposition was very well put by the Arizona Supreme Court in Phoenix Newspapers, Inc. v. Superior Court In and For Maricopa County, 101 Ariz. 257, 418 P.2d 594, 596, wherein it stated:

"Courts are public institutions. The manner in which justice is administered does not have any private aspects. To permit a hearing held in open court to be kept secret, the order of secrecy being based entirely on defendant's request, would take from the public its right to be informed of a proceeding to which it is an interested party."

In our opinion the question of the right of the public to attend court proceedings and the right of the press to be there as a part of the public is so well settled and well established that it requires no further amplification at our hands. However, this does not mean that a court has no power over those present in the court room. This court has said:

"It cannot be doubted that a trial judge has authority to exclude * * * a child witness, who from the nature of the case must testify to revolting facts, by excluding morbid, prurient, curious and sensation-seeking persons from the court room, so long as he does not abuse his discretion and deprive the accused of the right to have his family and friends present as well as a reasonable portion of the public."

Beauchamp v. Cahill, 297 Ky. 505, 180 S. W.2d 423.

We understand the concern of the juvenile judge to protect the names of juvenile witnesses in cases of this nature. However, under the present law there is no way to draw the line between merely prohibiting the publishing of the names and various other more harmful forms of censorship. In this respect it should be noted that Wis-

consin has a statute forbidding the publishing of the names of female rape victims and this statute has been upheld by the courts of that state. State v. Evjue, 253 Wis. 146, 33 N.W.2d 305, 13 A.L.R.2d 1201. If the legislature were to pass such a properly limited statute with regard to the names of juvenile witnesses in this kind of case, the same result might be reached.

■ A somewhat more difficult situation is presented with respect to trials of juveniles in the juvenile session of the court conducted pursuant to KRS 208.060. That statute reads as follows:

"All cases involving children shall be dealt with by the juvenile court at separate hearings and without a jury. The hearings shall be conducted in an informal manner, and may be adjourned from time to time. The general public shall be excluded and only such persons admitted as the judge shall find to have a direct interest in the case or in the work of the court. The presence of the child in court may be waived by the court at any state of the proceedings."

The question here is whether the appellant applied the statute in an unconstitutional manner. We believe he did. In the first instance he had no authority to permit the public to be present at these proceedings. It is absolutely forbidden by the terms of the statute itself. However, when the meetings were open to a portion of the public they at that time became public hearings and certainly he had no authority to exclude a portion of the public. To permit this practice would be to incubate an evil far worse than the evil of a secret trial for it would permit a judge to pack the court room with his friends and favorites and to disseminate to the public a completely false impression of what transpired there. To this question, the trial court very aptly pointed out:

"Therefore, since we are dealing with a public right and a Constitutional guarantee, the Court must do one of two things in order to achieve equal protection of laws for the plaintiffs, and that is to say it must either order that the general public and all representatives of the media of public communication be excluded from the Juvenile Session of the Fayette County Court, or it must order that as long as the enforcement of the law is being excused as to all other media of public communication, the plaintiffs must be admitted to the Juvenile Sessions in the same fashion as the others until a general exclusion order is made and enforced."

With this conclusion, we wholeheartedly agree. We do not believe that the trial judge could condition admission on certain rules however reasonable, because to so allow, would allow future conditions not so reasonable.

■ In Courier-Journal and Louisville Times Co. v. Curtis, Ky., 335 S.W.2d 394, we held that newspapers have the same right of access to public information as does any other member of the public but that right did not exceed the right of any other member of the public. We adhere to that doctrine. However, we believe that in public meetings, including trials, the right of the press to be present should, if not preferred, at least be safeguarded because of their ability to disseminate the information concerning the proceedings to an interested public much larger than those able to attend.

■ In this respect it should again be pointed out that it is the province of the legislature to open juvenile hearings to the public if they are to be opened. And, if they are to be opened with restrictions, then the legislature should set the restrictions.

The judgment is affirmed.

HILL, MILLIKEN, PALMORE and WILLIAMS, JJ., concur.

MONTGOMERY, C. J., and STEINFELD, J., do not concur.