OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

|  |  |  |
|---|---|---|
| OPINION | : | No. 89-903 |
| of | : | January 9, 1990 |
| JOHN K. VAN DE KAMP<br>Attorney General | : | |
| ANTHONY S. DA VIGO<br>Deputy Attorney General | : | |

---

THE HONORABLE JAMES P. FOX, DISTRICT ATTORNEY, COUNTY OF SAN MATEO, has requested an opinion on the following question:

Would the adoption by the Midpeninsula Regional Open Space District of a resolution listing all parcels of real property larger than twenty acres within its planning area as the potential subject of negotiation for purchase satisfy the disclosure prerequisite for a closed session regarding the purchase of any one or more of such parcels?

CONCLUSION

The adoption by the Midpeninsula Regional Open Space District of a resolution listing all parcels of real property larger than twenty acres within its planning area as the potential subject of negotiation for purchase would not satisfy the disclosure prerequisite for a closed session regarding the purchase of any one or more of such parcels.

1

ANALYSIS

A regional open space district is a public agency created pursuant to law (§§ 5500, 5501)[1], and governed by a legislative body consisting of a board of directors (§§ 5527, 5537). A district is comprised of contiguous territory of three or more cities, or of one or more cities having a combined population of 50,000. A district may operate and maintain a system of public parks and open space preserves for public recreation, use, and enjoyment, and for such purposes may select, designate, and acquire land. (§ 5541.) A district may acquire the land by grant, purchase, or condemnation. (§§ 5540, 5542, 5544.2.)

The Midpeninsula Regional Open Space District was created in 1972, consisting of a precisely defined 330 square mile area south of San Francisco and northwest of San Jose. More than 30,000 acres of large, undeveloped or sparsely developed parcels of foothill and bayland open space adjacent to urbanized areas have been acquired. The Midpeninsula board of directors conducts a meeting twice monthly, in each of which a closed session is held. In each such closed session, a prescheduled list of one to five specific parcels is considered for purchase. The district has prepared a list, updated annually, of approximately 700 parcels that might be discussed at any time during the year, with specific criteria so that owners will know whether their properties may be considered. The list consists of properties within the district's planning area that are larger than twenty acres. Only a small percentage of the listed parcels are discussed in one year. Thus, the fact that a parcel is on the list does not in any way indicate an interest in the property, but rather that the property could possibly be discussed in a closed session during the year. Negotiations with an owner may transpire in this respect without the knowledge and interference of third parties, e.g., real estate brokers, developers, and competitive bidders.

We are asked whether the listing by the district of all parcels of real property larger than twenty acres within its planning area satisfies the disclosure prerequisite for a closed session regarding the purchase of any one or more of such parcels. Section 5535 provides that all legislative sessions of the board, which shall be held at least once each month, shall be open to the public. However, section 5536, subdivision (b), provides that a "meeting", for purposes of per diem, includes closed sessions of the board.

We have recently reviewed the basic tenets of the principal statute governing the conduct of open meetings of local agencies. (71 Ops.Cal.Atty.Gen. 96 (1988).) The public policy underlying the Ralph M. Brown Act is expressly declared at the outset (Gov.

---

[1]Unidentified statutory section references herein are to the Public Resources Code, unless otherwise noted.

2

Code § 54950).[2]

"In enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly.

"The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created."

Section 54953, subdivision (a), contains the principal operative provision of the Act:

"All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, *except as otherwise provided in this chapter.*" (Emphasis added.)

The board of directors of a regional open space district is a "legislative body" within the meaning of section 54952:

"As used in this chapter, 'legislative body' means the governing board, commission, directors or body of a local agency, or any board or commission thereof, and shall include any board, commission, committee, or other body on which officers of a local agency serve in their official capacity as members and which is supported in whole or in part by funds provided by such agency, whether such board, commission committee or other body is organized and operated by such local agency or by a private corporation."

(And see, Pub. Resources Code, ¶ 5537: "The board of directors is the legislative body of the district and shall determine all questions of policy.") Further, a district is a "local agency" within the meaning of section 54951:

"As used in this chapter 'local agency' means a county, city, whether general law or chartered, city and county, town, school district, municipal

---

[2]Hereafter, all undesignated section references are to the Government Code.

corporation, *district,* political subdivision, or any board, commission or agency thereof, or other local public agency." (Emphasis added.)

Two additional sections may be pertinent to this analysis. Section 54958 provides that:

"The provisions of this chapter shall apply to the legislative body of every local agency notwithstanding the conflicting provisions of any other state law."

Section 54962 provides:

"*Except as expressly authorized by this chapter*, . . . no closed session may be held by any legislative body of any local agency." (Emphasis added.)

We are now prepared to consider whether section 54956.8 constitutes such an express authorization. That section provides as follows:

"Notwithstanding any other provision of this chapter, a legislative body of a local agency may hold a closed session with its negotiator prior to the purchase, sale, exchange, or lease of real property by or for the local agency to give instructions te its negotiator regarding the price and terms of payment for the purchase, sale, exchange, or lease. However, prior to the closed session, the legislative body of the local agency shall hold an open and public session in which it identifies the real property *or real properties* which the negotiations may concern and the person or persons with whom its negotiator may negotiate.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

This statute authorizes the holding of a closed session by a local agency for the purpose of giving instructions to its negotiator regarding the price and terms of purchase of real property, provided that the agency first identify in open session the property or properties which the negotiations may concern. It has been suggested that the phrase "real proper*ties* which the negotiations *may* concern," is a proper reference to the whole universe of properties which the agency is permitted by law to consider for purchase. Under this interpretation, the district's list of 700 parcels would satisfy the requirement for a closed session even though the two parcels scheduled for review and instruction at a particular closed session have not been otherwise disclosed.

Selected rules of statutory interpretation were recently summarized in *Beaty*

4

*v. Imperial Irrig. Dist.* (1986) 186 Cal.App.3d 897, 902:

> "The fundamental rule of statutory construction is ascertaining the intent of the Legislature so as to effectuate the purpose of the law. (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230.) The court looks first to the language of the statute, attempting to give effect to the usual, ordinary import of that language and seeking to avoid making any language mere surplusage. Significance if possible should be attributed to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. (*Ibid.*) *The* various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645.) The provisions must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. (*United Business Com.* v. *City of San Diego* (1979) 91 Cal.App.3d 156, 170, *City of Costa Mesa v. McKenzie* (1973) 30 Cal.App.3d 763, 770.)"

We begin with the consideration that each word should be significant rather than superfluous, and accorded its usual and ordinary import. In this regard, the statute requires that an open session be held in which the public agency "identifies" the property or properties which may be considered in the closed session. In *People v. Weger* (1967) 251 Cal.App.2d 584, 593, the court considered the words "identify" and "identity":

> "Here, again, we may look to the commonly accepted meaning of the words. According to the American College Dictionary, 'identify' means to 'establish as being a particular person or thing; attest or prove to be as purported or asserted. 'Identification,' according to College Law Dictionary means 'Proof that a person or thing is the person or thing [he or] it is supposed or represented to be.'

> "*State v. Evjue,* 253 Wis. 146 [33 N.W. 2d 305], involved a statute which prohibited the publication of 'the identity of a female who may have been raped or subjected to any similar criminal assault . . .' (P. 308 [33 N.W. 2d].) In holding that the word 'identity' as there used was not unconstitutionally vague or indefinite the court said (p. 309 [33 N.W. 2d]): 'The word "identity" is not a word of art in the law. "Identity" is a noun and from it the adjective "identical" is derived. Things are said to be identical when they are the same, equivalent, equal. To identify is to establish the identity of; to prove the same with something described, claimed, or asserted.

5

> Identity is defined as sameness of essential or generic character in different examples or instances; the limit approached by increasing similarity; sameness in all that constitutes the objective reality of a thing. (Webster) . . . .' "

In our view, the publication of a list of 700 parcels fails to particularly establish, and therefore to identify, the subject matter of the closed session, consisting of not more than six prescheduled parcels. It must be noted in this regard that the property or properties must be identified "prior to the closed session," and with the degree of specificity required to effectuate the statutory purpose. (*Cf. Davis v. City of Berkeley* (1988) 47 Cal.3d 512, 516–517.) The apparent purpose of the enactment was to provide the members of the public an opportunity to comment or to take pertinent action in favor of or opposition to a particular acquisition, such as by communication with other members of the public, one or more members of the board, its staff, or the owner of the property or the agents of the owner. In order for any such comment or action to be relevant and appropriately directed, however, the property to be considered at a particular closed session of the board, as well as "the person or persons with whom its negotiator may negotiate," must be specifically identified. In accordance with this statutory purview, a public disclosure must be made identifying with particularity the properties to be considered in each closed session.

Further, the proposed publication is not reasonably consistent with the general purpose and intent of the Legislature. As expressed in its declaration of public policy (§ 54950, *supra*), the legislative purpose was to foster the right of the people to remain informed so that they may retain control over the instruments they have created. In this regard, we fail to perceive the practical utility of the proposed list of properties and owners. It is, of course, well established that the Brown Act should be interpreted liberally in favor of its open meeting requirements, while the exceptions to its general provisions must be strictly, or narrowly, construed. (*San Diego Union v. City Council* (1983) 146 Cal.App.3d 947, 954–955.) Section 54956.8, beginning with the words, "[n]otwithstanding any other provision of this chapter," is an exception within the meaning of sections 54953, subdivision (a), and 54962, both *supra,* to the general rule that the meetings of legislative bodies of local agencies shall be open and public.

It is concluded that the listing by the district of all parcels of real property larger than twenty acres within its planning area does not satisfy the disclosure prerequisite for a closed session regarding the purchase of any one or more of such parcels.

———